SAMUEL GREELEY *versus* THE MAINE CENTRAL R. R. Co.

No action lies for the turning of mere surface water from one's own land upon the land of another.

ON FACTS AGREED. This was CASE, in which the plaintiff alleges that the water from the springs and brooks upon and over his land, from the time whereof the memory of man runneth not to the contrary, in its natural course and channel, was wont to run in a north-westerly direction from the plaintiff's land on to land north of and adjoining the plaintiff's lot, and thence over and across said adjoining lot into Chandler's pond ; yet the defendants, not ignorant of the premises, but intending to deprive the plaintiff of the use of a part of his said land, on the first day of May,

1854, and continually afterwards to the date hereof, the ancient and natural course of the water of the springs and brooks upon and flowing over and across the land of said plaintiff, at Readfield aforesaid, on to and across and over the land of the lot next north of and adjoining the plaintiff's said lot into said Chandler's pond, with a certain railroad track-bed and embankment, erected and maintained by them across the plaintiff's lot, did carelessly and negligently and needlessly obstruct and turn from its natural and ancient course; by reason of which turning and obstruction, the water of said brooks and springs was carried along by the easterly side of said railroad track-bed and embankment, from and off of the land next adjoining the plaintiff's lot, on the north of the same, over and across the plaintiff's said lot into said Chandler's pond, by reason whereof his said land has been overflowed by the same and the earth and gravel carried by such overflow on to the same," &c.

It was agreed that, in 1847, the defendants duly located their railroad across the land described in the writ of the plaintiff, and his grantor conveyed to them the land covered by their location. The plaintiff became the owner of his lot in 1854.

Defendants excavated upon the higher side of their roadway and made an embankment in the middle of it, with ditches at the side, in the manner in which the road-bed for railways is accustomed to be built. The road-bed across plaintiff's lot is made by excavation or cut, and across the lot next adjoining north, it is made by an embankment or fill. When said railroad was built, the defendants made a cattle-pass under the road, near the south line of plaintiff's land, to allow cattle to pass from plaintiff's land upon one side of their railroad to his land on the other side. They built no culvert in their road on plaintiff's land.

The land of plaintiff declines in a southwesterly direction to Chandler's pond, into which the water from his lot naturally flows. Plaintiff's land, adjoining defendants' road

on the east, is higher than that portion of his lot lying farther east, and the water from his lot in its natural course flows north-westerly, on to the adjoining lot, and thence over said adjoining lot into Chandler's pond.    There is no brook with defined banks upon plaintiff's land, but upon the adjoining lot, next north of plaintiff, there is a deep gully which receives the water from the plaintiff's lot and also from the lands north of the plaintiff's lot.    The land lying north of plaintiff's declines towards the south-west.

In wet seasons, and during the fall and spring rains, and the melting of the snow, large quantities of water drained from the plaintiff's lot and, uniting with the water draining from the lands north of the plaintiff's lot, flowed in its natural course into said gully, and thence into said pond. The defendants constructed and have always maintained a culvert across their railroad in this gully, sufficient to pass all the water which now flows down this gully.

By the construction of the railroad, the water naturally draining and flowing from the plaintiff's land, east of the railroad, on to and over the adjoining lot north, and from the adjoining lands north of plaintiff's lot into the gully above named, and thence in said gully into Chandler's pond, has been diverted and turned from its natural and accustomed course before it reached said gully, into the ditch on the east side of the road-bed, and carried along this ditch to the cattle-pass, and through that on to the plaintiff's land on the other side of the railroad; and in wet seasons, and after heavy rains and the melting of snow, the water carried along with it dirt, sand, and gravel, which have been yearly deposited on plaintiff's land, injuring it, &c.

*E. O. Bean,* for the plaintiff.

1. The injury complained of is not one of the necessary consequences of building a railroad in a proper manner; and, therefore, the original assessment or payment of damages is no bar to this action.

2. For turning running water, whether from surface

streams or otherwise, from its natural course on other lands, on to those of the plaintiff to his injury, the defendants are liable in this form of action.

*Drummond*, for the defendants.

DANFORTH, J. — From the statement of facts, it appears that the injury complained of arises from the turning of mere surface water, — that which accumulated from rains and melting snows, — from its accustomed course upon land of plaintiff. This being caused by erections upon defendants' land authorized by law, no action will lie. *Dickenson* v. *Worcester*, 7 Allen, 19 ; *Flagg* v. *same*, 13 Gray, 601 ; *Barry* v. *Lowell*, 8 Allen, 127 ; *Parks* v. *Newburyport*, 10 Gray, 28, and cases cited.    *Judgment for defendants.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and BARROWS, JJ., concurred.