GARLAND *v.* TOWNE.  { DECEMBER 9, 1874.

| | |
|---|---|
| 55 | 55 |
| 68 | 186 |
| 55 | 55 |
| 69 | 128 |
| f69 | 315 |
| 55 | 55 |
| 72 | 99 |
| 55 | 55 |
| f74 | 306 |

The defendant was the owner of a building, situated on Elm street in Manchester, and extending to the margin of said street. Snow and ice, which had accumulated on the roof, slid off, striking upon the sidewalk, and injured the plaintiff. On demurrer to the declaration—*Held,* that it was a question for the jury whether any want of due care on the part of the defendant caused the injury.

A building, so erected that its roof overhangs the street, is a nuisance, and its erection and maintenance an indictable offence. Gen. Stats., chap. 70, sec. 11. If the injury to the passenger were the direct consequence of this unlawful act, negligence in the defendant need not be averred or proved.

ACTION on the case, by Lucy Garland against Nancy Towne, for negligence. The first count in the declaration alleges that on the fourth day of February, A. D. 1873, there was a public highway in Manchester known as Elm street, on either side of which there is a sidewalk, etc.; that on said fourth day of February, 1873, the defendant was the owner of a building situated on said Elm street, and extending up to the line of said street, which said building is so constructed as to obstruct the fall of the snow, and to cause it to accumulate, and ice to form on the roof thereof, and to be precipitated into said Elm street and upon

the sidewalk so used as aforesaid, on the east side of said street; and the plaintiff avers that on said fourth day of February, 1873, she was passing along, and on foot, on said sidewalk, as she lawfully might, and that a large quantity of ice, which had accumulated and formed on said building of the defendant, was precipitated and fell upon the plaintiff.

The second count is like the first, except that it contains an allegation that the roof and eaves of the defendant's building project over and into Elm street, and also the following: " And while so passing along and on said sidewalk as aforesaid, a large quantity of ice and snow, which had accumulated on the roof of the said defendant's said building, and which the said defendant, though well knowing thereof, had long and negligently suffered to be and remain upon the roof and eaves of the building aforesaid, endangering the life and limbs of those having occasion to pass over and along said street, was precipitated and fell upon the plaintiff, striking her upon the head," etc.

The defendant demurred, generally, to each of the counts of the declaration, and the questions thereon arising were reserved.

*Morrison, Stanley & Hiland,* for the plaintiff.

*S. N. Bell,* for the defendant.

LADD, J.  In the trial of this cause, I think it will be for the jury to say whether the injury of which the plaintiff complains was caused by the negligence, that is, the want of due care, on the part of the defendant.  I suppose the fact that ice slid from the roof upon the sidewalk on this particular occasion is evidence to be considered on the general question of the defendant's negligence; and I see no reason why the jury might not legally find negligence from that circumstance alone, if unexplained.  It was the general duty of the defendant to prevent the sliding of snow and ice from her roof upon the sidewalk; she was bound to guard against such a result by the exercise of due and proper care.  When, therefore, the thing she was thus bound to guard against and prevent happened, I should say *res ipsa loquitur*, and if no explanation were offered, the jury might find negligence without other proof. It is much like the recent case of *Kearney* v. *The London, Brighton, &c. Railw. Co.*, Law Rep., 6 Q. B. 759.  There, as the plaintiff was passing along a highway under a railway bridge of the defendants, which was a girder bridge resting on a perpendicular brick wall with pilasters, a brick fell from the top of one of the pilasters on which one of the girders rested;—a train had passed just previously.  The question was, whether, there being no other evidence of negligence, a verdict for the plaintiff could be allowed to stand; and it was held, that the defendants being bound to use due care in keeping the bridge in proper repair, the falling of the brick was evidence from which the jury might infer negligence in the defendants.

It has been thought that the doctrine laid down in *Rylands* v. *Fletcher*,

Law Rep., 1 Exch. 65, affirmed on error, Law Rep., 3 H. L. 3
applicable to cases of this sort.  In that case the defendants consti
ed a reservoir on land separated from the plaintiff's colliery by in
vening land; mines under the site of the reservoir, and under part
the intervening land, had been formerly worked, and the plaintiff ha
by workings lawfully made in his own colliery and in the intervenin
land, opened an underground communication between his own collier
and the old workings under the reservoir.  It was not known to the
defendants, nor to any person employed by them in the construction of
the reservoir, that such communication existed, or that there were any
old workings under the site of the reservoir, and the defendants were
not personally guilty of any negligence; but, in fact, the reservoir was
constructed over five old shafts leading down to the workings.  On
the reservoir being filled, the water burst down these shafts, and flowed
by the underground communication into the plaintiff's mines.  Held,
reversing the judgment of the court of exchequer (3 H. & C. 774),
that the defendants were liable for the damage so caused.

In the opinion of the court, by BLACKBURN, J., the decision is placed
distinctly and emphatically on the ground that one who, for his own
purpose, brings upon his land, and collects and keeps there, anything
likely to do mischief if it escapes, is *prima facie* liable for all the
damage which is the natural consequence of its escape.  Water is, in
this respect, put in the same category with beasts wont to rove and do
mischief, filth, and noxious odors.  And the same view was taken by
Lord CAIRNS, Chancellor, and Lord CRANWORTH, who delivered opinions
in the house of lords.

I am not aware that any court on this side the Atlantic has gone so
far as this; and I apprehend it would be a surprise, not only to that
large class of our people engaged in various manufacturing operations,
who use water-power to propel their machinery, and for that purpose
maintain reservoirs, but to the legal profession, to hold that, in case of
the breaking away of such reservoirs, there is no question of care or
negligence to be tried, but that he who has thus accumulated water in
a "non-natural" state on his own premises is liable, at all events as
matter of law, in case it escapes, for the damage caused by it.  See
*Mayor of New York* v. *Bailey*, 2 Den. 433.  But however that may
be, it is to be borne in mind that ice and snow, although the material
of which they are composed is water, are, nevertheless, solids, and, as
such, are no more liable to escape control, and pass upon the premises
of an adjoining proprietor and there do mischief, than any other solid
bodies of a similar material construction, that is, of like specific gravity
and external form.  Water, on the other hand, being a liquid, the par-
ticles of which move easily upon each other, is constantly seeking a
level, and so exerts a constant force which must be constantly re-
strained; and all the mischiefs of an inundation are certain to follow
the breaking away of the barriers erected for its control.  This is its
nature as much as it is the nature of cattle to rove and eat a neigh-
bor's corn, or of filth from a privy to be offensive, or of unwholsome

...ics to be diffused, so as to contaminate the air which a neighbor impelled to breathe.

...s a general proposition, it is safe to say that the owner of land has ...ight to make a reasonable use of his property ; and that right ex-...ds as well to an unlimited distance above the earth's surface as to ... unlimited distance below. He may not only dig for a foundation ...nd a cellar as deep as he pleases, but he may erect his building as ...high as he pleases into the air, subject all the time, of course, to a proper application of the doctrine contained in the maxim *sic utere tuo ut alienum non lœdas.* The erection and maintenance of buildings for habitation or business is a customary and reasonable use of land. Of course the land-owner, in making such erections, must be held to the exercise of all due care against infringing the legal rights of others, to be determined by the nature of the rights and interests to be affected, and all the circumstances of each particular case. In this climate, where snow is sure to fall in considerable quantities at intervals during a considerable portion of the year, and equally sure in the end to melt and find its way back to the earth in the form of water or ascend into the clouds as vapor, the builder must undoubtedly be held to the exercise of all due and reasonable care against injury to others from the effect of these natural causes, operating, according to the known laws of nature, in the situation of things as altered from their natural state and condition by his own acts.

I think this case falls within that class of cases referred to by BRON-SON, C. J., in his elaborate and useful opinion in *Radcliff's Executors* v. *Mayor of Brooklyn,* 4 N. Y., p. 200, where it is held that a man will not be answerable for the consequences of enjoying his own property in the way such property is usually enjoyed, unless an injury has resulted to another from the want of proper care or skill on his part.

The doctrine is clearly stated in the first head-note to *Rylands* v. *Fletcher,* as reported—Law Rep., 3 H. L. 330—as follows : " Where the owner of land, without wilfulness or negligence, uses his land in the ordinary manner of its use, though mischief should thereby be occasioned to his neighbor, he will not be liable in damages." This is a broad statement of a general legal proposition, and must not be regarded as an expression of opinion upon any specific question of evidence that may arise on the trial of this case.

It is quite possible these views may be found, on careful examination, not to be so much at variance with the recent decisions in Massachusetts, in the case of *Shipley* v. *Fifty Associates,* 101 Mass. 251, and 106 Mass. 194, as they at first appear, although both the learned judges who delivered the opinions of the court gave expression to remarks implying that the doctrine of *Rylands* v. *Fletcher* may have application in such a case,—to which, with very great diffidence, I find myself unable to agree.

If a man must, at all hazards, keep upon his own premises the snow which is arrested in its natural fall to the earth by the roof of his house, it seems to me some very inconvenient, not to say absurd, con-

sequences may follow. We all know that in this climate a heavy fall of snow is not unfrequently followed immediately by wind; and, when that happens, it is a probable if not an inevitable consequence that the snow, which has been arrested in its natural fall, and accumulated on roofs, will be carried off and deposited by the wind in a different place from where it would have finally rested but for the roof;—hence, in very many instances, the act of the land-owner in maintaining his building, concurring with the natural operation of the elements, will cast upon the premises of an adjoining proprietor snow with which, otherwise, such adjoining proprietor would not have been annoyed, incumbered, or damaged. I do not see why such a doctrine, if carried to its logical results and strictly applied, would not practically prevent the building of cities. I think the injury which results in such a way, from a customary and reasonable use by the land-owner of his property, he using due care (which would doubtless be a very high degree of care) to guard against damage to his neighbor, does not furnish a legal course of action, but must be regarded as *damnum absque injuria.* I make this remark simply with reference to the supposed application of the doctrine of *Rylands* v. *Fletcher* to this case; and I purposely abstain from any extended discussion of the legal questions which may arise in the case, because those questions can be better and more intelligently considered when the actual facts, as shown upon a trial, are before us.

The conclusion I come to is, that the demurrer must be sustained as to the first count, and overruled as to the second.

CUSHING, C. J. The declaration contains two counts. In the first, it is alleged that the defendant's building is placed by the side of the highway, and so constructed that the snow and ice may accumulate upon the roof, and from the roof fall into the street; and it does not allege any negligence or want of due care in the construction or management of the building, and therefore assumes as law, that if, under any circumstances, snow and ice should fall from the roof and injure a passenger in the highway, the defendant would be liable absolutely.

The second count alleges that the roof was constructed so as to overhang the highway, and that, through the negligence of the defendant, the snow and ice fell into the street and injured the plaintiff.

In *Brown* v. *Kendall*, 6 Cush. 292, SHAW, C. J., says, *arguendo*,—"If, in the prosecution of a lawful act, a casualty purely accidental arises, no action can be supported for an injury arising therefrom."

" In using this term, ordinary care, it may be proper to state that what constitutes ordinary care will vary with the circumstances of cases. In general, it means that kind and degree of care which prudent and cautious men would use, such as is required by the exigency of the case, and such as is necessary to guard against probable danger."

" To make an accident, or casualty, or, as the law sometimes states it, inevitable accident, it must be such an accident as the defendant could not have avoided by the use of the kind and degree of care

necessary to the exigency, and in the circumstances in which he was placed."

It appears to me that the eminent judge who delivered the opinion in this case has given in these few words a clear and intelligible statement of a principle of law of universal application. In the case of *Brown* v. *Collins*, 53 N. H. 442, the doctrine laid down by SHAW, C. J., in the case of *Brown* v. *Kendall*, 6 Cush. 292, and above cited by us, is affirmed and approved after a very elaborate and exhaustive discussion, and must now be taken to be the law of New Hampshire. There may be cases where the very fact that the accident has happened may justly be considered as evidence tending to show neglect.

In the case under discussion, it is not alleged that the defendant, in erecting and maintaining her building, had violated any local statute or by-law of the city of Manchester, nor does it appear that the act of erecting and maintaining the building was unlawful,—so that the defendant is not liable unless there has been a want of due care; and the first count of the declaration, which seeks to charge her absolutely, cannot be maintained.

By Gen. Stats., ch. 70, sec. 11, the erection or continuance of a building upon or over any highway is punishable by indictment and fine, and the building so erected is a nuisance. If, therefore, the building of the defendant is, as alleged in the second count of the plaintiff's declaration, so built as to project over the highway, it is a nuisance, and the maintaining of it an indictable offence. This being so, the injury to the plaintiff would appear to have been produced by the unlawful act of the defendant, and she would be liable without proof of negligence.

FOSTER, C. J., C. C. I agree with my learned brethren that the first count in the plaintiff's declaration cannot be sustained, and that the demurrer thereto must be allowed. The second count not only alleges positive negligence and want of proper care in suffering the snow and ice to accumulate upon her building and to remain there, and, moreover, that the building was " so constructed " as to obstruct the fall of snow and ice and cause it to accumulate thereon, and to cause ice to form on the roof and be precipitated upon the sidewalk below, but it also contains the distinct allegation that " the roof and eaves " of the defendant's building " project over and into Elm street," thus charging the defendant with maintaining a nuisance, in violation of express statutory law. The demurrer to the second count must, therefore, be overruled.

If the allegation of the projection of the eaves and roof over and into the street should be proven on the trial of the cause, the plaintiff will be entitled to a verdict, without any evidence of actual negligence or want of care on the part of the defendant being required.

The existence of the nuisance, and the injury therefrom to a person using ordinary care on his part, are sufficient to sustain an action against the author or maintainer of the nuisance. Shearman & Redfield on

Negligence, sec. 363, and authorities cited; *Elliot* v. *Concord*, 27 N. H. 208.

Independently of this consideration, I am not prepared to hold that the mere fact of the injury to the plaintiff from the falling of the ice from the defendant's roof is anything more than evidence competent for the consideration of the jury upon the question of the defendant's negligence. I am not prepared to say that it is *prima facie* evidence of negligence, in so far as evidence thus denominated is sometimes said to be sufficient to require the defendant to assume thenceforward the burden of proof, or to rebut any presumption arising from the fact. The fact raises no presumption, nor touches the burden of proof. It is evidence simply, which, with or without other evidence bearing upon the general question of negligence, the jury may consider and weigh.

The general reasoning of my brother LADD, as expressed in his opinion, seems to me logical and sensible. Certainly, it is not opposed to any authority in this state, though its results have not been expressed as settled law.

*Demurrer sustained as to first count, and overruled as to second.*