THOMPSON *v.* THE ANDROSCOGGIN RIVER IMPROVEMENT COMPANY.

In grants from the state, nothing passes except that which is expressed, or which is matter of necessary intendment, in order to give effect to the manifest intention of the grant.

The public are entitled to the reasonable use of a natural aquatic highway; and if a riparian owner is injured thereby, he is not entitled to compensation.

A legislative grant of authority to make improvements within a limited location for the purpose of facilitating the navigation of a public river, does not, by implication, confer the power to affect injuriously property outside the location, without making compensation therefor.

Whenever the acts of an agent will bind the principal, his declarations respecting the subject-matter will also bind him, if made in regard to a/ transaction in which he is then engaged.

CASE, to recover damages occasioned by the flowing of the plaintiff's land on the Androscoggin river, below the defendants' dams.    Ver-

dict for the plaintiff. With a plea of the general issue, the defendants filed a brief statement, setting forth (54 N. H. 545–547) the terms of a charter granted them by the legislature of this state, under which they have made certain improvements of the channel of the river, from its source to the northern limits of the Androscoggin Boom Company, erecting dams, sluices, and side-booms, and making other improvements, to facilitate the running of logs and rafts; that the plaintiff's land is situated below and outside the defendants' location; and that whatever damage was done to the plaintiff's land was done in the due exercise, in a reasonable and prudent manner, of their rights under said act, and in the use of the river as a public highway.

The defendants requested the court to charge the jury that " they have the right, under their charter, to improve the Androscoggin river, within their location, by building dams, sluices, and otherwise improving the same, to facilitate the running of timber, and to do the same in a manner sufficient for the purpose, and that they are not liable for damages outside of the limits of their charter, provided they made and used such improvements in a reasonable and prudent manner; that the charter authorizes them, as public agents, to improve the river as a highway in a manner to enable them to hold back the water and to discharge it, so as to carry the logs to market; and although such use does at times diminish and at other times increase the natural volume of the stream, yet, if this is done and used in a reasonable and proper manner, and to facilitate the running of logs, the plaintiff is not entitled to recover for any such incidental damage as he claims; that he, as a riparian owner, holds his land subject to the public right to have the river improved and used as a public highway."

These requests the court declined to grant, but charged the jury, among other things not excepted to, as follows: " The Androscoggin river is a natural highway through the plaintiff's land, for the purpose of floating logs at the times and in the manner in which it is naturally capable of floating them. The defendants, in common with the public, have the right to make a reasonable use of the river as a natural highway, and if the plaintiff is injured by reason of such reasonable use, he is without remedy. The plaintiff, being the owner of a farm on the river, has the right to hold and use it, uninjured by any unreasonable use of said river as a natural highway. This right is property as much as the farm itself. The plaintiff can sell this property, or the public can take it for public uses, under the right of eminent domain, by paying him for it. But the defendants' charter fixing their location, and the plaintiff's farm not being included within said location, give the defendants no rights in addition to the general rights of the public. The question is, whether or not there has been an unreasonable use of this natural highway with reference to the plaintiff's farm, to its injury; if there has been, then you should begin to assess damages where the reasonable use ceases and the unreasonable use begins, and assess damages for the unreasonable use only. The

court does not say whether the improvements, or the use of the improvements, or any improvement or use, is reasonable or unreasonable; that is a question for you to decide."

The defendants excepted to the instructions given, and to the refusal of those requested.

Subject to the defendants' exception, the court permitted one Horn to testify that the defendants' managing agent told him "they should use all the water they wanted for driving purposes, and if they did not get what they wanted, it would be owing to the elements above."

*Twitchell, Ray & Drew*, and *Ladd*, for the plaintiff.

*Burns & Heywood* and *Fletcher & Heywood*, for the defendants.

FOSTER, J.  The defendants claim that the authority conferred by their charter, to make improvements of the river within a certain location upon payment of damages to owners of property injured thereby, is a guaranty of immunity against liability for any injury occasioned, by means of the improvements thus authorized, to property outside the prescribed location.

This position cannot be sustained.  The terms of the charter in this respect are restrictive as to the locality of the improvements authorized.  See 54 N. H. 546.  Compensation for damages to property, injuriously affected within the location by means of these improvements, is particularly prescribed; but it cannot be inferred that the legislature, granting the power to take or injure the property of A within the location upon payment of compensation, intended to confer the right to take or injure the property of B outside the location, upon any different and more liberal considerations.

Whether any different rules of construction should be adopted with respect to public and private grants (the intention of the grantor being, in either case, the thing to be ascertained, and the governing principle of construction in both cases), it may certainly be declared that a grant of this character is not to be enlarged by unnecessary construction.  The grant of the king passes nothing by implication. *The Case of Banne River*, Davies 55 (Dublin, 1674), citing 2 Henry VII, 13; *Duke of Somerset* v. *Fogwell*, 5 B. & C. 875.  The rule, thus promulgated in England four hundred years ago, applies in this country to all grants from the state.  Potter's Dwarris 257; Cooley Const. Lim., ss. 468, 469; *La Plaisance Bay Harbor Co.* v. *City of Monroe*, Walker's Ch. 155; *McManns* v. *Carmichael*, 3 Iowa 1; *The People* v. *The Canal Appraisers*, 33 N. Y. 461; *Van Horne* v. *Dorrance*, 2 Dal. 316; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 545.

There is nothing in the constitution of New Hampshire, nor in the doctrines of the common law, to prevent the state or its agents from improving the navigation of the public rivers; and the mode and extent of such improvement are to be determined by the legislature, not

by the courts.    But the state, or its agents or grantees, cannot take
or injure private property without affording compensation therefor.
*Orr* v. *Quimby,* 54 N. H. 590.

Whatever difficulties may be raised in other cases by the distinction
between the use and an improvement of a public stream, none seem
to be presented in this case; and we are not called upon to anticipate
the difficulties which such a distinction may present.    The state has
conferred on the defendants the right to make certain improvements
for the purpose of facilitating public navigation.    Special privileges of
unreasonable use or improvement could only be granted upon the
terms of making compensation for private injuries occasioned thereby.
The defendants, in common with the rest of mankind, had the right,
irrespective of any legislative grant, to the reasonable use of the river.
Whether this reasonable use involves, to some extent, the right of im-
proving the water-way by the removal of temporary or permanent
obstructions, or otherwise, as in the case of a highway on land,—
whether, on this point, there is a distinction between an artificial way
for which compensation has been (or is presumed to have been) made,
and a natural way acquired without compensation,—are questions not
necessary to be now determined.    If the defendants had a right of
improving the way without making compensation, they do not claim
that it was a right to make an unreasonable improvement.    The ques-
tion of the reasonableness of their improvements, as well as the ques-
tion of the reasonableness of their use of the natural and the improved
way, was submitted to the jury.    The instructions were sufficiently
favorable to the defendants.    *Eaton* v. *B. C. & M. R. R.,* 51 N. H.
504; *Thompson* v. *A. R. I. Co.,* 54 N. H. 545; *Norway Plains Co.*
v. *Bradley,* 52 N. H. 86, 109, 110.

The declaration of the defendants' agent, as testified by Horne, was
properly admitted.    It was a declaration tending to characterize the
acts which the managing agent was then doing.    Upon the question
of the reasonableness of the use of water, it was competent to show
the extent of that use, and whether it was conducted with a reasona-
ble regard for the interests and rights of others, or whether the de-
fendants were governed only or mainly by their own pleasure and
convenience.    Whenever the acts of an agent will bind the principal,
his declarations respecting the subject-matter will also bind him, if
made in regard to a transaction in which he is then engaged.    Story
on Agency, *ss.* 134–137; 1 Ph. Ev. 381; 1 Greenl. Ev., *s.* 113.

                                    *Judgment on the verdict.*

BINGHAM, J., did not sit.