Merrimack, }
Dec. 23, 1901. }

## FRANKLIN v. DURGEE & a.

Whether an obstruction of the natural flow of surface water by a landowner in the use of his premises constitutes an actionable wrong when injurious to another, depends upon the reasonableness or unreasonableness of such use, which is a question of fact, to be determined at the trial term in view of all the circumstances of the particular case.

A bill in equity alleging that the defendants have constructed upon their land an embankment which causes surface water to flow back upon the plaintiffs' premises, and that such use is unreasonable, states a sufficient ground for equitable relief.

Where a public highway is damaged by the unreasonable obstruction of surface water upon adjoining premises, the municipality is entitled to the same relief that a private landowner would have for the redress of a similar injury.

BILL IN EQUITY, by the city of Franklin, alleging in substance that the defendants are the owners of land adjoining a highway in the city; that surface water naturally flows across the highway and on to the defendants' land; that many years ago the plaintiffs built culverts across the highway, which conveyed the water on to the defendants' land in the natural depressions; that the defendants have placed earth on their land next to the highway, which has stopped the flow of the water, causing great damage to the highway; that stopping the flow of the water in the way described is an unreasonable use by the defendants of their land; and that for the proper and suitable maintenance of the highway the surface water should be allowed to pass on to their land. The prayer is that the defendants be ordered to remove the obstruction and be enjoined from obstructing or interfering with the flow of the water. The defendants filed a demurrer to the bill, which was overruled at the April term, 1901, of the superior court by *Peaslee,* J., subject to their exception.

*Edward G. Leach,* for the plaintiffs.

*Barron Shirley,* for the defendants.

WALKER, J.   " The doctrines of reasonable necessity, reasonable care, and reasonable use prevail in this state in a liberal form, on a broad basis of general principle." *Haley* v. *Colcord*, 59 N. H. 7, 8.   In *Thompson* v. *Androscoggin Co.*, 54 N. H. 545, 551, it is said : " Property in land must be considered, for many purposes, not as an absolute, unrestricted dominion, but as an aggregation of qualified privileges, the limits of which are prescribed by the equality of rights, and the correlation of rights and obligations, necessary for the highest enjoyment of land by the entire community of proprietors."

" Whatever may be the law in other jurisdictions, it must be regarded as settled in this state that the test is the reasonableness or unreasonableness of the business in question under all the circumstances.   The owner may put his land or other property to any use not unlawful which, in view of his own interest and that of all persons affected by it, is a reasonable use.   For the consequence to others of such a use, he is not responsible.   The question of reasonableness is a question of fact." *Ladd* v. *Brick Co.*, 68 N. H. 185, 186.   " As a general rule, every person has the right to subject his property to such uses as will in his judgment best subserve his interests.   This rule has its exceptions, however, for it is doubtless true that every one is bound to make a reasonable use of his own property so as to occasion no unnecessary damage to others ; but what constitutes such a use cannot be precisely defined, and must depend upon the circumstances of each case." *Lane* v. *Concord*, 70 N. H. 485, 488, 489.

These essential principles relating to the use and enjoyment of property are sometimes overlooked or treated as impracticable generalities by a literal application of the maxim, *cujus est solum ejus est usque ad coelum* (*Shane* v. *Railroad*, 71 Mo. 237, 244), and especially is this observable in cases involving the right to the use, management, and control of surface water.   If the owner of land has absolute and unlimited dominion thereof, wholly independent and irrespective of his neighbors' enjoyment of their contiguous lands, he may with impunity wholly prevent the natural flow of surface water upon his land, and cause it to flow back upon the adjacent owner's land by means of an embankment or other obstruction erected upon the division line ; and he would be entitled to thus inflict immense damage upon others' property, not because he might derive some advantage from the operation or because it is a reasonably necessary method of developing and improving his land, but merely because the land is his.   Upon this theory, he " may make erections or excavations thereon to any extent whatever.   Within his own limits, he can control not only the face of the earth, but everything under it and over it.   Thereby the estate

of another may be in various ways injuriously affected. Much loss and hardship, even, might grow out of it. But it is not a legal injury, and there is no legal remedy for it. . . . He may erect structures upon his land as high as he pleases without regard to its effect upon surface water, no matter how much others are disturbed by it." *Morrison* v. *Railroad*, 67 Me. 353, 355.

In *Gannon* v. *Hargadon*, 10 Allen 106, 109, it is said that the maxim above referred to "is a general rule, applicable to the use and enjoyment of real property, and the right of a party to the free and unfettered control of his own land above, upon, and beneath the surface cannot be interfered with or restrained by any considerations of injury to others which may be occasioned by the flow of mere surface water in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment." It is stated by Mr. Gould in his work on Waters (*s.* 265), that by the common law "a landowner may appropriate to his own use or expel from his land all mere surface water or superficially percolating waters, in draining his soil for agriculture, in collecting it for domestic purposes, or for the sole purpose of depriving an adjoining owner of it." In other words, it is held in numerous cases that the landowner, by virtue of his proprietorship alone, has the unqualified right at common law to divert or obstruct the natural flow of surface water coming upon his land. *Bangor* v. *Lansil*, 51 Me. 521; *Greeley* v. *Railroad*, 53 Me. 200; *Morrison* v. *Railroad*, 67 Me. 353; *Murphy* v. *Kelley*, 68 Me. 521; *Chatfield* v. *Wilson*, 28 Vt. 49; *Luther* v. *Company*, 9 Cush. 171; *Gannon* v. *Hargadon*, 10 Allen 106; *Franklin* v. *Fisk*, 13 Allen 211; *Bates* v. *Smith*, 100 Mass. 181; *Barkley* v. *Wilcox*, 86 N. Y. 140; *Bowlsby* v. *Speer*, 31 N. J. Law 351; *Cairo etc. R. R.* v. *Stevens*, 73 Ind. 278; *Benthall* v. *Seifert*, 77 Ind. 302; *Hoyt* v. *Hudson*, 27 Wis. 656; *Lessard* v. *Stram*, 62 Wis. 112; *Johnson* v. *Railway*, 80 Wis. 641; *Jones* v. *Railway*, 18 Mo. App. 251; *Collier* v. *Railroad*, 48 Mo. App. 398.

Other courts reach an opposite result by adopting the rule of the civil law with reference to surface waters, which is that if they "have their course regulated from one ground to another, whether it be by the nature of the place, or by some regulation, or by a title, or by ancient possession, the proprietors of the said grounds cannot innovate anything as to the ancient course of the waters. Thus, he who has the upper grounds cannot change the course of the water, either by turning it some other way, or rendering it more rapid, or making any other changes in it to the prejudice of the owner of the lower grounds. Neither can he who has the lower estate do anything that may hinder his grounds from receiving the water which they ought to receive, and that in the manner

which has been regulated." Dom. Civ. Law (Cush., ed.), s. 1583 ;. Gould Wat., s. 266 ; *Martin* v. *Riddle*, 26 Pa. St. 415 ; *Gormley* v. *Sanford*, 52 Ill. 158 ; *Anderson* v. *Henderson*, 124 Ill. 164, 170 ; *Leidlein* v. *Meyer*, 95 Mich. 586 ; *Garland* v. *Aurin*, 103 Tenn. 555.

By the rule of unlimited ownership of land, the defendants in this case could captiously maintain the embankment complained of, while by the rule of the civil law the plaintiff could with equal disregard of the defendants' property insist upon their removing the obstruction and allowing the water to flow naturally from one estate upon the other. The frequent hardship and practical injustice of applying one of these formulas strictly and exclusively has in some cases apparently resulted in the application of the other, and two opposing rules have thus been evolved in different jurisdictions from the inherent injustice of both. Because under some circumstances the upper proprietor would suffer great damage if the lower proprietor, with little or no advantage to himself, were allowed to interrupt the natural flow of surface water, it has been determined that the former has an absolute right, in all cases, to have the water flow upon the land of the latter; and because, under other circumstances, similar damage would result to the lower proprietor if he were not allowed to divert the water, it has been determined that he may do so in all cases without regard to the damage thus caused to the upper proprietor. It has seemed to some courts that an inflexible rule must be applied in such cases, though its practical effect is oftener attended with great hardship than with substantial justice. But when the hardship becomes sufficiently excessive, means have been devised in some cases to avoid it, in jurisdictions where one rule or the other is generally recognized, and some approach to the doctrine of reasonableness has been made. In *Vanderwiele* v. *Taylor*, 65 N. Y. 341, the fact is recognized " that the rule which would be applicable to surface water in agricultural districts must be somewhat modified in its application to city lots." But to relax the rule for that reason is in effect the adoption of the rule of reasonable user. If ownership alone is the test, the location of the land, whether in the city or in the country, becomes immaterial. It is only important in its bearing upon the legal rights of the parties when those rights are ascertained, in part at least, by a reasonable regard for the proper enjoyment by each of his adjacent land.

In *Livingston* v. *McDonald*, 21 Ia. 160, 164, Judge *Dillon* says : We recognize the fact (to use Lord *Tenterden's* expression) that surface water or slough water is a common enemy which each landowner may reasonably get rid of in the best manner possible ;. but in relieving himself he must respect the rights of his neighbor,

and cannot be justified by an act having the direct tendency and effect to make that enemy less dangerous to himself and more dangerous to his neighbor. He cannot make his estate more valuable by an act which unnecessarily renders his neighbor's less valuable." Many other cases recognize the importance, in the proper administration of justice in such cases, of limiting the rights of both by the reasonably beneficial enjoyment by both of their contiguous lands, among which the following may be cited: *Waterman* v. *Railroad,* 30 Vt. 610, 615; *Adams* v. *Walker,* 34 Conn. 466; *Forbell* v. *New York,* 164 N. Y. 522, 526; *Boyd* v. *Conklin,* 54 Mich. 583; *Rowe* v. *Railway,* 41 Minn. 384; *Brown* v. *Railway,* 53 Minn. 259, 263; *McCormick* v. *Railroad,* 57 Mo. 433, 438; *Shane* v. *Railroad,* 71 Mo. 237; *Hughes* v. *Anderson,* 68 Ala. 280; *Minor* v. *Wright,* 16 La. An. 151.

The common-law right of the ownership of land, in its relation to the control of surface water, as understood by the courts of this state for many years, does not sanction or authorize practical injustice to one landowner by the arbitrary and unreasonable exercise of the right of dominion by another, based upon a narrow view of the effect of the land titles. Rightly understood and judiciously applied, the law in this respect protects every one in the reasonable enjoyment of his property, and imposes upon none burdensome servitudes for the benefit of others by the strict enforcement of a technical rule of ownership briefly expressed in an ancient maxim. Reasonableness is the vital principle of the common law.

In regard to surface water or drainage, "a man may exercise his own right on his own land as he pleases, provided he does not interfere with the rights of others. The rights are correlative, and, from the necessity of the case, the right of each is only to a reasonable user or management; and whatever exercise of one's right or use of one's privilege in such case is, under all the circumstances and in view of the rights of others, such a reasonable user or management, is not an infringement of the rights of others; but any interference by one landowner with the natural drainage, injurious to the land of another and not reasonable, is unjustifiable. Every interference by one landowner with the natural drainage, actually injurious to the land of another, would be unreasonable if not made by the former in the reasonable use of his own property." *Bassett* v. *Company,* 43 N. H. 569, 577.

In *Swett* v. *Cutts,* 50 N. H. 439, it was held that a landowner who, in the reasonable use of his own land, diverts or obstructs the flow of water not gathered into a stream, but either circulating through the pores of the earth or spreading over the surface in the season of melting snows or heavy rains, is not liable for an injury

to his neighbor caused by such diversion or obstruction. The court say (*p.* 446): "The doctrine which we maintain adapts itself to the ever-varying circumstances of each particular case, from that which makes a near approach to a natural water-course, down by imperceptible gradations to the case of mere percolation, giving to each landowner, while in the reasonable use and improvement of his land, the right to make reasonable modifications of the flow of such water in and upon his land. In determining this question all the circumstances of the case would of course be considered; and among them the nature and importance of the improvements sought to be made, the extent of the interference with the water, and the amount of injury done to the other landowners as compared with the value of such improvements, and also whether such injury could or could not have been reasonably foreseen."

In *Rindge* v. *Sargent*, 64 N. H. 294, it is held that the reasonableness of a use of land which obstructs the flow of surface water over it is determined by its operation upon the interests of all parties affected by it. "A use is reasonable which does not unreasonably prejudice the rights of others. In determining the question of reasonableness, the effect of the use upon the interests of both parties, the benefits derived from it by one, the injury caused by it to the other, and all the circumstances affecting either of them, are to be considered." See, also, *Rowe* v. *Addison*, 34 N. H. 306; *Hayes* v. *Waldron*, 44 N. H. 580, 584, 585; *Flanders* v. *Franklin*, 70 N. H. 168; *Priest* v. *Railroad*, ante, *p.* 114.

If the correlative rights of adjoining owners in the control of surface water, as thus defined, is peculiar to the jurisprudence of this state (Cool. Torts 575, note), the principle involved is based upon a broader ground of justice than attends the practical operation of either of the extreme views above noted, and is recognized as an essential element in many cases in other jurisdictions, as has been already shown. The question presented in such cases is not so much one of law as of fact. It would doubtless be convenient if it could always be answered by citing a stereotyped definition of legal right. But as the situation of all adjoining owners of land is not the same, and as the circumstances attending the use of land in view of the flow of surface water are infinitely various, the failure to attain substantial justice by the enforcement in all cases of a rule of law which does not recognize these important differences is not surprising. The result is that the question of the reasonableness of the use in a given case must be determined as a question of fact under all the attendant circumstances.

It is to be noted that no question of evidence is presented by

the reserved case. The bill alleges that the defendants have thrown up an embankment on their land adjoining the highway, which causes the water to flow back and greatly to injure the highway, and that this is an unreasonable use by the defendants of their land. It is clear that the bill states a sufficient ground for equitable relief, and that the demurrer was properly overruled. The plaintiff may be entitled to the form of relief suggested in the prayer of the bill. If the defendants' use of their land is found to be unreasonable under all the circumstances, such relief will be granted as shall appear to be equitable under the bill and the facts disclosed by the evidence.

The fact that the plaintiff is a municipality does not prevent it from maintaining the bill. It is bound to keep the highway in a proper state of repair, and for that purpose it has the exclusive control of it. It is therefore a coterminous proprietor with the defendants and is entitled to the same relief, with reference to surface water, that an individual owner would be. *Eaton* v. *Railroad*, 51 N. H. 504, 530; *Flagg* v. *Worcester*, 13 Gray 601, 603.

*Exception overruled.*

All concurred.