Coös,
June 29, 1907.

MOORE v. BERLIN MILLS CO.

An owner of flowage rights who creates a reservoir by means of a dam is not liable for damages caused to other land by the percolation of water, unless such use of his property is unreasonable; and the reasonableness of the use is a question of fact, to be determined in view of all the circumstances of the particular case.

CASE, for injuries to the plaintiff's land caused by the percolation of water from Dead river, across which the defendant maintains a dam. Plea, the general issue. Trial by jury and verdict for the plaintiff. Transferred from the December term, 1906, of the superior court by *Stone*, J.

The plaintiff's sole claim was for injuries occasioned by the percolation of water from the defendant's pond through land of the Grand Trunk Railway into her sand-pit. Her land is bounded easterly by land of the railroad, is not contiguous to the defendant's pond or to Dead river, and is from 97 to 183 feet distant therefrom. The defendant claimed that one question was whether it was making a reasonable use of the stream and its adjoining lands. The court did not submit that question to the jury, but instructed them that if the defendant "sees fit to build a dam across that highway and stop the water in its natural flow, it would be liable then for all damages that occurred to anybody by reason of damming up and stopping the water in its natural flow." To this instruction the defendant excepted.

*Jesse F. Libby* and *Edmund Sullivan*, for the plaintiff.

*Drew, Jordan, Shurtleff & Morris* and *Rich & Marble*, for the defendant.

WALKER, J.    In this action the plaintiff seeks to recover dam-
ages occasioned by water which, it is claimed, the defendant, by
means of its dam across the river, causes to percolate through the
ground and into the soil of the plaintiff.    Between the river and
the plaintiff's land the railroad owns a strip of land from 97 to
183 feet wide, through which the water percolates before it reaches
the plaintiff's land. ` Hence it follows that the plaintiff cannot
complain that the defendant's dam obstructs the natural flow of
the river or interferes with her riparian rights.    So far as she is
concerned, the defendant must be deemed to be the rightful owner
of flowage rights in the river; and those rights are property rights,
in the enjoyment of which it is entitled to the same protection
accorded to the owners of real estate generally.    The retarded
flow of the water in the river produces an artificial reservoir which
the defendant has the right to maintain and enjoy as its property;
and the case does not materially differ from what it would be, if
the defendant had constructed a reservoir on its own land for
some useful purpose, and water from it had by percolation finally
reached the plaintiff's land and damaged her sand-pit.

Upon this state of evidentiary facts, the court in substance
instructed the jury, subject to the defendant's exception, that the
defendant is liable for all damages caused by the percolating
water, without regard to the question of the reasonableness of the
defendant's use of the dam and the river.    This was in effect tell-
ing the jury, that though the defendant could not in the exercise
of ordinary prudence foresee the injury to the plaintiff resulting
from the percolation of water from its reservoir, though it was
guilty of no negligence with reference to the plaintiff's rights, and
though it used ordinary care in the management of its property to
avoid causing injury to others, still it was bound at its peril to
keep the water held in its reservoir from reaching the plaintiff's
land, located 100 feet from the river, through undiscovered sub-
terranean passages.    The doctrine of *Fletcher* v. *Rylands*, L. R.
1 Exch. 265, 272,—3 H. L. Cas. 330, was thus applied without
qualification; and the jury, upon finding that the water did per-
colate into the plaintiff's land in consequence of the swollen con-
dition of the river, and that it caused damage to the plaintiff's
land, were required as a matter of law to return a verdict for the
plaintiff.    But the doctrine of that case has been repudiated in
this state.    In *Garland* v. *Towne*, 55 N. H. 55, 57, *Ladd*, J., appre-
hended: "It would be a surprise, not only to that large class of
our people engaged in various manufacturing operations, who use
water-power to propel their machinery, and for that purpose main-
tain reservoirs, but to the legal profession, to hold that, in case of
the breaking away of such reservoirs, there is no question of care

or negligence to be tried, but that he who has thus accumulated water in a 'non-natural' state on his own premises is liable, at all events as matter of law, in case it escapes, for the damage caused by it." See, also, *Brown* v. *Collins,* 53 N. H. 442; *Carter* v. *Thurston,* 58 N. H. 104, 107; *Davis* v. *Whitney,* 68 N. H. 66; *Gerrish* v. *Whitfield,* 72 N. H. 222, 224.

The radical inapplicability of that doctrine to the modern state of industrial enterprise, even if it was suited to and originated in an ancient civilization, is pointed out in *Brown* v. *Collins, supra,* and is deemed to be a sufficient reason for its rejection as a present rule for regulating the rights and duties connected with the ownership and use of property. And the court say (*p.* 450): "When a defendant erroneously supposed, without any fault of either party, that he had a right to do what he did, and his act, done in the assertion of his supposed right, turns out to have been an interference with the plaintiff's property, he is generally held to have assumed the risk of maintaining the right which he asserted and the responsibility of the natural consequences of his voluntary act. But when there was no fault on his part, and the damage was not caused by his voluntary and intended act, or by an act of which he knew or ought to have known the damage would be a necessary, probable, or natural consequence, or by an act which he knew or ought to have known to be unlawful, we understand the general rule to be that he is not liable." The distinction between interfering with the property of one's neighbor under a claim of right, and causing him some damage or inconvenience by the reasonable enjoyment of one's property, though plain, has not been recognized by cases which have followed the theory of *Fletcher* v. *Rylands.* In the present state of society, the rights of property owners are not absolute, but interdependent, and a legal enjoyment thereof is not inconsistent with a resulting injury to others. *Bassett* v. *Company,* 43 N. H. 569, 577; *Hayes* v. *Waldron,* 44 N. H. 580, 584. As a consequence of this essential principle, the doctrine of reasonableness in the enjoyment of property has been established in this state as the test in many cases by which to determine questions of liability for damages arising from such enjoyment.

"As to the use of land in the control of surface water, the enjoyment of water percolating beneath the surface, and the use generally that may be rightfully made of real estate by the owner or occupant, the test has been considered to be not merely whether the act was an exercise of dominion on the land regardless of the injury to other land, but the reasonableness of the use under all the circumstances, including the necessity and advantage to one and the unavoidable injury to the other." *Horan* v. *Byrnes,* 72

N. H. 93, 97. " Every interference by one landowner with the natural drainage, actually injurious to the land of another, would be unreasonable if not made by the former in the reasonable use of his own property." *Bassett* v. *Company*, 43 N. H. 569, 577. " The question presented in such cases is not so much one of law as of fact. It would doubtless be convenient if it could always be answered by citing a stereotyped definition of legal right. But as the situation of all adjoining owners of land is not the same, and as the circumstances attending the use of land in view of the flow of surface water are. infinitely various, the failure to attain substantial justice by the enforcement in all cases of a rule of law which does not recognize these important differences is not surprising. The result is that the question of the reasonableness of the use in a given case must be determined as a question of fact under all the attendant circumstances." *Franklin* v. *Durgee*, 71 N. H. 186, 191.

" One of Eaton's proprietary rights was the correlative of R's duty of abstaining from such a use of air and water, and from such an interference with their quality and circulation, as would be unreasonable and injurious to the enjoyment of Eaton's farm. The same principle governs the ownership and use of land, and all material things. Whether we say that R had a right to make a reasonable use of his land, and thereby cause a damage to Eaton, or that he had not a right, by an unreasonable use of his land, to injure Eaton, or that Eaton had a right not to be injured by R's unreasonable use of his own land, we mean the same thing. The principle may be expressed in an affirmative or a negative form, in a statement of rights or a statement of duties. Calling it a rule of consequential damages, or treating it under that head, tends to envelop a very plain matter in unnecessary obscurity." *Thompson* v. *Company*, 54 N. H. 545, 554, 555.

In *Ladd* v. *Brick Co.*, 68 N. H. 185, 186, the principle is tersely stated thus : " The owner may put his land or other property to any use not unlawful which, in view of his own interest and that of all persons affected by it, is a reasonable use. For the consequence to others of such a use, he is not responsible. The question of reasonableness is a question of fact." In *Dolbeer* v. *Company*, 72 N. H. 562, 565, it is said : " The rights of the owners of lands adjoining the plaintiff's land to have water percolate from the pond through the ground to their lands, like the correlative rights of the plaintiff, are limited by the bounds of reasonableness. The plaintiff has a right to obstruct or change such percolation to an extent that is reasonable in view of its effect upon the interests of all parties affected by it." Many other cases might· be referred to, in which the foregoing principles have been applied. See

*Swett* v. *Cutts*, 50 N. H. 439, 446 ; *Thompson* v. *Company*, 58 N. H. 108 ; *Rindge* v. *Sargent*, 64 N. H. 294 ; *Hamlin* v. *Blankenberg*, 73 N. H. 258.

The charge of the court in this case, therefore, cannot be sustained. The defendant's acts in maintaining a dam across the river were not in the nature of trespasses as against the plaintiff. Its enjoyment of flowage rights by creating a reservoir for the storage of water to be used in the development of power at its mill, or for other useful purposes, did not depend upon the consent or pleasure of the plaintiff ; and the plaintiff cannot complain unless her damage results from its unreasonable exercise of those rights. What acts would be competent and sufficient evidence, or would constitute as a matter of law conclusive evidence, of an unreasonable exercise of its flowage rights, it would be useless to attempt to specify. The case discloses evidence tending to show that the defendant was using its mill property in a reasonable manner with reference to the plaintiff's land. Whether it violated its duty to the plaintiff in this respect by suffering water from the river to reach her land by percolation, and whether, after learning of the damage it occasioned to her land, it could and should, under the circumstances, have prevented the percolation, are questions determinable, not by the court under set rules relating to legal titles, but by the jury in the exercise of a discriminating judgment in view of all the competent evidence.

Other questions presented by the record have not been considered, since upon another trial they may not arise.

*Exception sustained : verdict set aside.*

All concurred.