Coos
No. 6868

JOSEPH R. MICUCCI & a. v. WHITE MOUNTAIN TRUST COMPANY

June 28, 1974

*Edward J. Reichert,* by brief and orally, for the plaintiffs.

*George H. Keough,* by brief, for the defendant.

KENISON C.J. The main issue in this case is whether the trial court abused its discretion in finding that the defendant had unreasonably graded and paved a parcel of land adjacent to the plaintiffs' property so as to direct the flow of rain and melting snow toward their buildings and driveway, thus causing damage to them. The plaintiffs brought an action for injunctive relief and damages against the defendant. After a trial by the Court (*Bois,* J.) with a view, a verdict was rendered in favor of the plaintiffs in the amount of $4,400. The court denied the defendant's motion to dismiss the action during the course of trial and its motion to set aside the verdict, and reserved and transferred its exceptions thereto.

The plaintiffs are the owners of a parcel of land in Gorham, New Hampshire on which a store, a garage and a gravel driveway are located. In July and August of 1971, the defendant graded and paved a lot adjacent to the plaintiffs' property to provide parking spaces for its patrons and employees. The plaintiffs introduced considerable evidence that the paving of the adjacent lot substantially increased the amount of rain and melting snow discharged from the lot onto their property and caused damage to their buildings and driveway.

First, there was testimony from a surveyor, Steve Woodward, that the gradation of the pavement caused the diffused surface waters to collect and concentrate into one point of discharge on the plaintiffs' property and thereafter flow down their driveway into a catch basin at the bottom. The plaintiff Joseph Micucci and a neighbor

Frances Lynch both testified that the quantity of water flowing over the driveway was greatly in excess of the runoff prior to the paving of the defendant's lot and caused erosion damage. Second, a contractor, John Scarinza, testified that the asphalt curbing on the border between the pavement and the plaintiffs' property was graded above the foundation level of the plaintiffs' garage and caused surface water to become trapped in-between the curbing and the foundation located several feet away. Mrs. Lynch, who had parked her car in the garage for many years, stated that the garage flooded during the spring thaw in 1972 and 1973, but had never been wet in previous seasons. Mr. Scarinza gave his expert opinion that this accumulation of water had contributed to the rotting of the sills and woodwork of the garage. Third, the plaintiff Joseph Micucci stated that the overflow from the impounded water between the curbing and the garage foundation collected behind the store and penetrated into the basement. To avoid flooding, the plaintiff testified that he was compelled to dig trenches outside the building to divert the water. Finally, there was evidence that the plaintiffs intended to convert the garage into a beauty salon, but the rotten condition of the woodwork and the flooding caused by the elevated curbing made it necessary for them to tear down the structure and build a new one with a higher foundation, thus increasing their expenditures by $3,000. Testimony was also introduced that it would cost $1,400 to redirect the drainage to avoid future water damage to the store and driveway.

The law in New Hampshire has been long established that a property owner may use, manage or control the diffused surface waters (5 R. Clark, Waters and Water Rights § 450.5 (1972)) on his land in any manner so long as it is reasonable in view of his own interest and that of all other persons thereby affected. *Franklin v. Durgee,* 71 N.H. 186, 187, 51 A. 911 (1901); 5 R. Powell, The Law of Real Property § 731 (P. Rohan ed. 1971, Supp. 1973); Annot., 59 A.L.R.2d 421, § 7 (1958, Supps. 1967 & 1974). The owner's alteration of the natural or existing runoff patterns is a factor to be considered along with the nature and im-

portance of his use of the land, the foreseeability of the harm and the amount of resulting injury in arriving at a determination of whether it is reasonable. *Swett v. Cutts,* 50 N.H. 439, 446 (1870); Kalinski & Forste, *A Survey of New Hampshire Water Law,* 13 N.H.B.J. 3, 14-19 (1970); 5 R. Clark, Waters and Water Rights § 453.3 (1972); Restatement of Torts § 833 (1939); Restatement (Second) of Torts § 822, Comment *k* (Tent. Draft No. 18, 1972).

We are satisfied in this case that there is ample evidence to support the trial court's conclusion that the defendant paved its lot in an unreasonable manner. Although the paving of the lot was a convenience to the bank employees and patrons, it was graded in such a manner as to cause extensive damage to the plaintiffs' real estate. This damage could have been avoided by designing the gradient to spread the flow of the diffused surface waters and prevent a concentrated discharge. *Flanders v. Franklin,* 70 N.H. 168, 169, 47 A. 88, 89 (1899). The defendant claims this conclusion is "absurd" on the ground that the paving of the lot did not alter the existing runoff pattern of surface waters because the land had been previously covered by a building. *Cf. Hamlin v. Blankenberg,* 73 N.H. 258, 60 A. 1010 (1905). We reject this argument because it is undisputed that the defendant altered the grade of the parcel in preparation for laying the pavement and plaintiffs' neighbor Mrs. Lynch testified that the problems with the runoff and water accumulation commenced shortly after the paving was completed. While it is true that both the pavement and the former building prevented the natural absorption of water into the ground, there was evidence that the alteration in the gradient of the surface greatly increased the quantity of water discharged onto the plaintiffs' property. *See Willston Apartments, Inc. v. Berger,* 229 F. Supp. 338 (D. Va. 1964).

There is also sufficient evidence to support an award of $1,400 for the construction of the drainage system to divert the flooding. However, the defendant argues that the award of $3,000 for the increased construction cost resulting from the water damage to the garage is speculative. It points out that Mr. Scarinza admitted that some of the

rot in the woodwork existed prior to the paving of the lot in 1971 and thus contends that it could not be wholly responsible for that damage to the structure. Although the evidence establishes the defendant's liability for the cost of building the new foundation to avoid the flooding, we agree that the plaintiffs might have been forced to replace some, if not all, of the garage shell when they refurbished the building for the beauty salon regardless of the defendant's negligence. Therefore, the case is remanded for a determination of whether the $3,000 award should be reduced because the defendant was not solely responsible for all of the damage to the woodwork.

*Defendant's exceptions overruled in part and sustained in part; remanded.*

All concurred.