Strafford
No. 88-207

MARK DUDLEY AND KIM DUDLEY

v.

CALVIN BECKEY AND MARGARET BECKEY

December 29, 1989

*Stephen A. White*, of Dover, by brief and orally, for the plaintiffs.

*Michael J. Carroll*, of Portsmouth, by brief and orally, for the defendants.

MEMORANDUM OPINION

BATCHELDER, J. The defendants appeal from a ruling of the Superior Court (*Nadeau*, J.), approving the report of a Master (*Charles T. Gallagher*, Esq.) recommending the granting of the plaintiffs' petition for mandatory injunctive relief and denying the defendants' cross-petition. On appeal, the defendants, Calvin and Margaret Beckey, claim that there was insufficient evidence to support the master's findings and that the plaintiffs, Mark and Kim Dudley, did unreasonably divert surface water upon their property in a manner violative of the common law doctrine governing the management and control of diffused surface water. We affirm.

The plaintiffs and defendants live on adjacent parcels of land located on Amvale Drive in the city of Dover, the plaintiffs' lot being situated on a higher grade than the defendants'. The plaintiffs purchased their parcel of land in 1980. At the time when title to the property passed to the plaintiffs, only the foundation of their new home had been completed. Prior to the plaintiffs' purchase of the property, the City of Dover (city) had installed a drainage pipe beneath a portion of the now plaintiffs' property. This drainage pipe was connected to a storm drainage system that directed surface water run-off from the surrounding area to a natural drainage swale located directly behind the subject properties. This drainage pipe ran beneath the plaintiffs' property to a point where it surfaced in close proximity to the boundary separating the two parcels.

To facilitate the placement of this drainage pipe, the city secured the appropriate easements over both the plaintiffs' and the defendants' properties. The defendants were fully aware of the existence of the drainage pipe prior to purchasing their property in 1972. In fact, the defendants have experienced "serious" standing water problems for the past fifteen years, and since 1973 have negotiated with the city in an attempt to eradicate these water problems. After repeated attempts to raise the elevation of their property proved to be ineffective in abating the flow of water onto their property, the defendants erected a cinder-block wall along the

boundary separating the two parcels. This wall was approximately 70 feet long and between 3 and 4 feet high. Not only was this wall ineffective in stemming the flow of water onto their property, it also caused water temporarily to back up on the plaintiffs' property.

At trial, the plaintiffs sought mandatory injunctive relief claiming that the defendants' actions in constructing the cinder-block wall, causing the temporary accumulation of surface water upon their property, amounted to the unreasonable management and control of surface water. The defendants cross-petitioned arguing that the plaintiffs, while constructing and landscaping their lot, altered its topography in such a way as to increase the flow and intensity of surface water run-off upon the defendants' property. The defendants claimed that this alteration of the topography was an unreasonable method of managing or controlling surface water, and that the plaintiffs, therefore, should be required to abate any continued discharge of surface water upon their property.

The master, after hearing testimony, and most importantly after taking a view, found in favor of the plaintiffs by recommending that the injunction, which required the removal of the cinder-block wall, be granted. The master found that even if, as the defendants claim, the plaintiffs had altered the topography of their property, such alteration was reasonable and did not change the natural flow of surface water. Additionally, the master found that the wall constructed by the defendants was ineffective in stopping the flow of water onto their property and that the structure was an eyesore.

A landowner may manage or control diffused surface water in any manner, provided it is reasonable in light of the interests affected thereby. *Micucci v. White Mt. Trust Co.*, 114 N.H. 436, 438, 321 A.2d 573, 575 (1974). In determining whether the measures taken by the landowner to control or manage diffused surface water are reasonable, a court must consider the extent of the alteration of natural or existing runoff patterns, the importance and nature of the land and its use, and the foreseeability and magnitude of any resultant damage. *Id.* at 438–39, 321 A.2d at 575. The master concluded that in light of these standards, the actions of the plaintiffs were reasonable and those of the defendants were not. As this court has previously held, we will not substitute our judgment for that of the trier of fact when it is supported by the evidence, particularly when the trier of fact has had the benefit of a view. *N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 779, 533 A.2d 351, 353 (1987) (citing *Heston v. Ousler*, 119 N.H. 58, 60, 398 A.2d 536, 537 (1979)).

Contrary to the defendants' assertions, the record contains evidence that their property had been subject to similar surface water problems dating back eight years prior to the plaintiffs' arrival. Given this evidence, it is clear that the master could properly have concluded, as he did, that even if the plaintiffs had altered the topography of their property, such alteration was reasonable and did not change the natural flow of the diffused surface water. Furthermore, there is ample evidence that the plaintiffs may not have altered the topography of their property as alleged. Accordingly, we find that the defendants failed to meet the burden of showing that the master's findings were not supported by the evidence.

*Affirmed.*

All concurred.