Merrimack, }
June 7, 1904. }

## DOLBEER, *Guardian,* v. SUNCOOK WATER-WORKS CO.

By the common law of this state, a natural, fresh-water pond containing more than ten acres is a large or great pond, and is public.

Where an aqueduct company, in pursuance of authority granted by its charter and by an exercise of the right of eminent domain, enters upon land abutting on public water, builds a dam for the purpose of flowage, and otherwise appropriates the pond and adjoining premises to the uses of its business, the owner is entitled to compensation for the land and rights therein actually taken, for any injury to adjoining land, and for any damage resulting from an interference with his right as a littoral proprietor to a reasonable use of the water.

PETITION, for the assessment of damages under the provisions of the defendants' charter (Laws 1891, *c.* 158). The plaintiff owns a tract of land in Allenstown which entirely . surrounds a natural pond containing fifteen to eighteen and a half acres. The only outlet of the pond is by percolation through the ground. In 1897, the defendants entered upon the land without the plaintiff's leave, dug up the soil, built a dam by means of which about ten acres of land are flowed, laid pipes in the land, and appropriated the pond and the land flowed to the uses of their business.

At the April term, 1903, of the superior court, it was ruled by *Peaslee,* J., subject to the plaintiff's exception, that the pond was public water, and that the plaintiff's damages were limited to compensation for the trespass and flowage.

*Martin & Howe,* for the plaintiff.

*Page & Bartlett* and *Mitchell & Foster,* for the defendants.

CHASE, J. The defendants' charter authorizes them to enter upon and appropriate any pond not belonging to an aqueduct company, to secure it by fences or otherwise, and to make such excavations upon any land as may be necessary for obtaining and con-

ducting the water from the pond and for repairing the works:
"*provided*, that if it shall be necessary to enter upon and appro-
priate any . . . ponds or land for the purpose aforesaid, or
to raise or lower the level of the same, and the said corporation
shall not be able to agree with the owners thereof for the damages
that may be done by said corporation, . . . either party may
apply to the supreme court . . . to have the same laid out
and the damages determined," etc. Laws 1891, *c.* 158, *s.* 5. The
record raises no question concerning the validity of the "laying
out" of the land and easements taken by the defendants, nor
does it definitely describe such land and easements. It states that
the defendants without the plaintiff's leave entered upon his land,
dug up the soil, erected a dam, flowed ten acres of the land by
means of the dam, laid pipes, and appropriated the pond and the
land flowed to the business of supplying water to the village of
Suncook. The plaintiff by bringing this proceeding elected to
treat the defendants as having acted under the authority of their
charter, instead of as trespassers. The defendants make no ob-
jection to this course. It is assumed that the "laying out"
includes the land and easements actually appropriated by the
defendants to their uses, together with the right to enter, and
repair and renew the structures and pipes, and manage them as
may be necessary in the prosecution of the business.

The plaintiff is entitled to compensation for the land taken for
the site of the dam, for the flowage caused by the dam, for the
injury to adjoining land (if any), for the rights taken to lay and
maintain pipes in the land, and for any other land or rights in
land taken from him. As the case is understood, these are the
damages referred to in the record as compensation for "trespass
and flowage," and to which recovery was limited by the ruling.
The plaintiff says that he is the owner of the pond itself, and is
entitled to damages for the taking of it, in addition to the items
above mentioned. This is the sole question for consideration.

At the December term, 1889, three cases were decided in which
the character of natural, fresh-water ponds, as to being public
or private waters, was considered: *Concord Mfg. Co.* v. *Robertson*,
66 N. H. 1, *State* v. *Welch*, 66 N. H. 178, and *Percy Summer
Club* v. *Welch*, 66 N. H. 180. In the last two cases the question
was definitely raised, whether a pond containing 300 to 500 acres,
situated in the midst of a tract of land belonging to a single
owner, was the private property of the landowner, or was public
property; and it was decided that it was public property. The
question was not fully discussed in these cases, but the first case
was cited as authority for the decisions without additional com-
ment, thus adopting the conclusion therein reached and the reason-

ing by which it was supported. If, as the plaintiff's counsel suggest, the question was not before the court in the first case, and so what was said upon it should be regarded as *dictum* if attention is fixed upon that case alone, yet when the three cases are considered together in connection with the fact that they were decided at the same term, by the same court speaking through the same judge (Chief Justice *Doe*), and with the further fact that the first case is cited as the authority for the decisions in the other two, it becomes apparent that the first case must be treated as authoritative on the question. In this case it is said: "In respect to title, the law divides natural, fresh-water ponds into two classes,—the small, which pass by an ordinary grant of land, like brooks and rivers, from which, as conveyable property, they are not distinguished,—and the large, which are exempted from the operation of such a grant for reasons that stop private ownership at the water's edge of the sea and its estuaries. Tide-waters and large ponds are public waters." 66 N. H. 4. See, also, *pp.* 7, 12, 14, 15, 24, 27. It is further said (*p.* 27): "However slight the argument in favor of any particular dimensions in determining whether a pond is public or private property, the law requiring a decision of the question authorizes the adoption of a necessary rule. A standard of size seems to be indispensable; and if a more satisfactory measure is not found, ponds of more than ten acres may properly be classed with Sanbornton bay." For these reasons alone, Long pond in Concord, containing 260 acres, and North pond in Stark, containing 300 to 500 acres, were held to be large ponds and public waters. In view of these decisions,—so recent and bearing evidence of such careful research,—and of the earlier decisions of the state cited in the first case, it must be regarded as settled that, by the common law of the state on the subject, a natural, fresh-water pond containing more than ten acres is a large or great pond, and is public.

According to this rule, the pond in the plaintiff's land is public water, and his absolute ownership in the land ceases at the water's edge, or at high-water mark. *State* v. *Sunapee Dam Co.*, 70 N. H. 458, 461. The bed of the pond inside of this line belongs to the public; but the plaintiff, as the owner of the adjoining land, has certain rights in it and in the water. "The dictates of justice and reason, which retain in the government, for common use, the fee of large ponds and the shores and arms of the sea (and in some states, large, fresh rivers), have vested a reasonable private right of using this public property in the owners of the adjoining land. . . . An abutter's use of the bed of a public water, like a riparian owner's use of a fresh river flowing over his land, is governed by the rule of reasonableness applied to the facts of his

case." 66 N. H. 18. As owner of the adjoining land, the plaintiff had the right to build wharves and other structures into the pond for his own use, to an extent that would not unreasonably interfere with the rights of the public in the pond. As an incident of the ownership of the land on which a dam can be built which will control the flow of water from the pond, he has the right to a reasonable use of the pond for a reservoir. *Cochecho Mfg. Co.* v. *Strafford*, 51 N. H. 455, 461. There being no open stream leading from the pond, there are no rights of riparian proprietors which conflict with or limit his right to use and control the pond for this purpose. In this particular the case differs from *Concord Mfg. Co.* v. *Robertson, supra.* The rights of the owners of lands adjoining the plaintiff's land to have water percolate from the pond through the ground to their lands, like the correlative rights of the plaintiff, are limited by the bounds of reasonableness. The plaintiff has a right to obstruct or change such percolation to an extent that is reasonable in view of its effect upon the interests of all parties affected by it. *Bassett* v. *Company*, 43 N. H. 569 ; *Rindge* v. *Sargent*, 64 N. H. 294. The plaintiff also has a right to make a reasonable use of the water of the pond for domestic, agricultural, and mechanical purposes, and his ownership of the surrounding land enables him to avail himself of the right without trespassing upon the land of others. In determining the value of the land which the defendants have appropriated for their uses, these rights in the pond, which are appurtenant to the land, should be taken into consideration.

It does not appear from the record that the plaintiff's damages were assessed. Apparently, the trial was stopped when the ruling was made, in order that the question raised by the exception might be determined and that the assessment might be subsequently made in accordance with the decision. Consequently, the order is

*Case discharged.*

All concurred.