Hillsborough,
Feb. 2, 1932.

NASHUA HOSPITAL ASSOCIATION *v.* CATHERINE A. GAGE *& a.*

*Hamblett & Hamblett* (*Mr. Robert B. Hamblett* orally), for the plaintiff.

*Doyle & Doyle*, for Luella J. and Jeremiah J. Doyle.

*Frank B. Clancy* (by brief and orally), for Lucy E. Shea.

*John D. Warren, pro se.*

PEASLEE, C. J.    Objection is made that the defendant's claim is not a cloud upon the title of the plaintiff in any event, and that therefore the bill does not lie.    If the restrictions are in force as claimed by the defendants, they constitute an encumbrance upon the plaintiff's property.    *Foster* v. *Foster*, 62 N. H. 46.    Whether they are now or ever have been in force as between these parties, depends in part upon facts not shown by the recorded conveyances.    The present proceeding is an appropriate one in which to have the facts found and a decree entered which will clear up the present indefinite state of the record.    *Hallett* v. *Parker*, 69 N. H. 134, and cases cited.

The conveyances from the common grantor to the predecessors in title of all the present owners of lots on the Gage plan were upon condition, the terms of which were that "in case of violation of either of the foregoing conditions on the part of said grantee or his heirs or assigns at any time hereafter this conveyance shall become void; the premises hereby conveyed shall be forfeited and shall be surrendered up to the person or persons to whom the same may revert." One claim of the plaintiff is that this is a covenant solely for the benefit of the grantor and his heirs, and that his grantees, either prior or subsequent to the deed to an offending party, took nothing by it. While the question does not appear to have been directly decided in this state, the reasoning of the court and the conclusions reached in *Foster* v. *Foster*, 62 N. H. 532, are based upon the idea that the grantor was the only party having interests growing out of the covenant. In considering the extent of the rights under the restriction as a breach of warranty in a deed later in the chain of title, no mention is made of any right of the other one hundred and four owners on the same street, holding under like restrictions, while the existence of the right of the grantor led to an order that before a new trial (which was ordered for other reasons) the original grantor should be cited in, there being an issue of abandonment raised by the defendant.

The earlier case, *Burbank* v. *Pillsbury*, 48 N. H. 475, was cited in the *Foster* case to another point; but any pertinence of the earlier case on this point was not suggested. The *Burbank* case holds, first, that a recital in a deed that the grantee "agrees for herself and her heirs and assigns" to forever maintain a certain fence amounted to a covenant running with the land "both ways," so that a later grantee of the land intended to be benefitted could maintain assumpsit against a notified grantee of the original grantee for failure to keep the agreement. It also decides that if the agreement implied from taking the deed were not to be treated as a covenant running with the land it would be enforceable in equity as against all parties taking with notice.

Unless the situation in the *Foster* case is to be differentiated from that in the *Burbank* case, there is no apparent reason for not citing in the one hundred and four other owners, as well as the Amoskeag company, in the *Foster* case. The reasonable explanation of this situation is that the doctrine of the earlier case was not considered applicable to the facts of the later one; that the recital of the agreement and the condition inserted in the deed of the Amoskeag company were thought to be solely for its own benefit.

The point as to other landowners could hardly have been over-looked, since it was urged in argument upon an earlier transfer of the same case (*Foster* v. *Foster*, 62 N. H. 46) that these rights constituted part of the encumbrance, while the defendant maintained that the deeds gave them no right at all. And upon the second transfer the claim of the defendant was reiterated. 142 Briefs and Cases, 339.

It would seem that these two cases are authority for the conclusion that where a deed poll contains recitals of agreements by the grantee and his heirs they may be treated as covenants running with the land; but where there is no such statement of undertaking by the grantee, or where the agreement is stated as a preamble to a condition subsequent, based upon restrictions upon the use of the property conveyed and with a provision for a forfeiture to the grantor and his heirs, there is nothing which runs with the land, and the rights against the grantee are only such as are personal to the grantor and his heirs. If in the *Foster* case the recital of the agreement of the grantee as to use, inserted in the deed as a preamble to a condition reserved to the grantor, did not create a right running with the grantor's land or a right enforceable by later grantees under the doctrine of the *Burbank* case, much less does such a condition without any preamble whatever give rise to any rights, save those personal to the grantor and his heirs.

If this is the correct view of the law, the defendants have no standing. The bill has been taken *pro confesso* as to the grantor's heirs, and the only contesting parties are the present owners of three lots originally sold by him.

In *First National Bank* v. *Bank*, 71 N. H. 547, the question whether mutual covenants concerning the use of land run with the land was left open; and the subject does not appear to have received further consideration in this jurisdiction. Elsewhere there has been a large amount of litigation over restrictive provisions in deeds, and the decisions relating thereto are very numerous. They are all collected and commented upon in an extended note in 21 A. L. R. 1281 *et seq.* Therefore it is not considered to be necessary to review in detail "that long bead-roll of cases which it seems to be always thought necessary to cite in cases of this kind." *James*, L. J., in *German* v. *Chapman*, L. R. 7 Ch. Div. 271, 276.

The test for the right to claim the benefit of building restrictions inserted in the several deed of a lotted parcel of ground is now quite well defined, both in this country and in England. While there is still come conflict of authority and much diversity of reasoning, the fundamental requisites for reciprocal rights among such grantees, as

laid down by the English court of chancery, have been generally recognized.

In *Elliston* v. *Reacher*, [1908] 2 Ch. 374, 384; *Ib.* 665, the matter is stated as follows: "It must be proved (1) that both the plaintiffs and the defendants derive title under a common vendor; (2) that previously to selling the lands to which the plaintiffs and defendants are respectively entitled the vendor laid out his estate, or a defined portion thereof (including the lands purchased by the plaintiffs and defendants respectively), for sale in lots subject to restrictions intended to be imposed on all the lots, and which, though varying in details as to particular lots, are consistent and consistent only with some general scheme of development; (3) that these restrictions were intended by the common vendor to be and were for the benefit of all the lots intended to be sold, whether or not they were also intended to be and were for the benefit of other land retained by the vendor; and (4) that both the plaintiffs and the defendants, or their predecessors in title, purchased their lots from the common vendor upon the footing that the restrictions subject to which the purchases were made were to enure for the benefit of the other lots included in the general scheme whether or not they were also to enure for the benefit of other lands retained by the vendors. If these four points be established, I think that the plaintiff would in equity be entitled to enforce the restrictive covenants entered into by the defendants or their predecessors with the common vendor irrespective of the dates of the respective purchases."

Whenever it appears that the original owner has adopted a general scheme of development, and has inserted in his deeds of lots restrictions intended by him and agreed by the purchasers to be for their reciprocal benefit, an equitable right is shown. There is nothing in the decisions in this state directly contradictory to this conclusion, and we think it should be accepted as sound law.

The real difficulty arises upon a consideration of what is or is not sufficient proof of these essentials. Must the facts all appear in the recorded conveyances? Can they be proved by showing negotiations, representations and the like? Can transactions with later grantees be used to affect the construction put upon earlier conveyances? These and kindred inquiries have been answered in diverse ways. With but little dissent, it has been the practice to receive evidence of the oral negotiations preceding the conveyance. Knowledge and intent of the parties have been sought at this source without much consideration of legitimacy of origin.

Where this theory is followed, proof of the essential points is usually available in cases involving recent transactions. But where the inception of the alleged right lies in the remote past proof in aid of the bare language of the conveyances is difficult and often impossible to procure. It is upon this feature of the problem that the authorities are most conflicting, while many of them fail to give it any adequate consideration. The need to prove the contemplation of the parties has often been given scant consideration, or has been inferred from inadequate evidence.

In the instant case the transactions alleged to create reciprocal rights among the grantees took place eighty years ago. The only evidence to prove the essential facts is the existence of similar restrictions in all the deeds. Some reliance has been put upon the fact that the common grantor made and recorded a plan of the lots. But this plan shows nothing in the way of restriction. "The plan, so far as it goes, indicates that the houses were not to be set back from the street lines." *Roak* v. *Davis*, 194 Mass. 481. Moreover, the plan shows that it was filed for record after at least two-thirds of the lots had been sold.

The case for the defendants stands upon the conveyances, unaided by extrinsic evidence. These contain no reference to any reciprocal rights conferred upon the several grantees. There is a condition in favor of the grantor, but no mention of any other limitation upon the title conveyed. If the existence of reciprocal rights is to be implied here, the inference must be drawn from the fact that all the deeds contain similar conditions reserved to the grantor. The cases wherein this question has received consideration hold that the inference cannot be drawn from that fact alone. *Mulligan* v. *Jordan*, 50 N. J. Eq. 363; *Roberts* v. *Scull*, 58 N. J. Eq. 396; *Sharp* v. *Ropes*, 110 Mass. 381; *Werner* v. *Graham*, 181 Cal. 174.

"It seems at least clear, upon principles which scarcely need be stated, that the subsequent conduct of the grantor in inserting a similar covenant in a subsequent conveyance of a part of the tract cannot be properly regarded as a circumstance in aid of the intention or purpose of the parties to the prior deed." *Sailer* v. *Podolski*, 82 N. J. Eq. 489.

A later Massachusetts case appears to take a different view, but without any discussion of the principle involved. *Evans* v. *Foss*, 194 Mass. 513. The force of this decision is much weakened by the conclusion adopted by the same court that as against the common grantor the grantees have no right to insist that he insert the contemplated

restriction in later deeds of other lots. This is put upon the ground that the statute of frauds requires a writing. *Sprague* v. *Kimball*, 213 Mass. 380. So the conclusion there seems to be that as against the grantor there must be a writing while as between the common grantees there need not be. The grantor's intent and promise to restrict the whole tract are essential elements in both instances; but as against the grantor they cannot be inferred from the deeds which he has signed while as against a grantee they may be inferred from the same deeds which he has not signed, and to only one of which he is a party.

If it were essential to the disposition of this case to determine this issue upon the facts at hand, it would seem that it should be resolved in favor of the plaintiff. These deeds were given over eighty years ago. The progress made in recent years in the development of theories concerning implied reciprocal equitable rights might make inferences permissible from present day transactions, which would be wholly unwarranted as to acts done in the days of stricter notions as to the nature of a condition in a deed. There is no evidence of a purpose to depart from the theories then generally accepted; and if there had been an agreement that giving a deed containing such a condition in favor of the grantor also imposed upon him an obligation as to his remaining land, one would naturally expect that it would have been expressed rather than left to dubious inference.

But it also appears that any possible rights of the grantees, as between themselves, have been lost. Assuming for the purposes of the case that the three objecting lot owners are entitled to be considered as parties who took certain rights having some characteristics of negative easements against all other owners of lots shown upon the Gage plan, the question presented is whether those rights have been lost by abandonment. And in order to determine whether there has been an abandonment it is necessary to consider the character of the asserted right.

The nature of rights acquired by the several lot owners where a plot of land has been divided and sold with independent, though similar, restrictions in the deed to each grantee has been variously defined in the authorities. There is no great difficulty in concluding that a later grantee ought to take in the right of his grantor against a prior grantee. But when it comes to the case of the prior grantee against the later one a different situation is presented. There being in the earlier deed no reference to a general scheme, no obligation can be attributed to the grantor in respect to his later conveyances, save upon the theory that his conduct is in effect a representation and

promise that all the lots are to be similarly restricted. And this undertaking is passed on to the subsequent grantee from the common grantor upon the theory that by taking a deed containing such a condition he is put upon notice that the grantor has, or may have, undertaken to impose like limitations upon the title to other lots and that each is for the benefit of all.

Such transactions do not confer rights enforceable in an action at law. There is at most only an equitable right, to be given effect by courts having chancery jurisdiction. *Whitney* v. *Railway*, 11 Gray, 359. As stated by English authority, "this community of interest necessarily, I think, requires and imports reciprocity of obligation which is in fact contemplated by each at the time of his own purchase." *Elliston* v. *Reacher*, [1908] 2 Ch. 374; *Ib.* 665; *Spicer* v. *Martin*, L. R. 14 App. Cas. 12.

"It will be found upon examination, that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another, from defeating such rights, and not upon the idea that the engagements enforced create easements or are of a nature to run with the land." *Brewer* v. *Marshall*, 19 N. J. Eq. 537, 543. See also *De Gray* v. *Company*, 50 N. J. Eq. 329, where the subject is exhaustively considered.

These authorities are in accord with the rule in this state as to easements implied from reference to a plan showing proposed streets. "The right is not based upon a covenant that the way exists. *Howe* v. *Alger*, 4 Allen 206. It arises merely by way of estoppel . . . the relation must be such as to create substantial equities." *Douglass* v. *Company*, 76 N. H. 254, 256. See also *McCleary* v. *Lourie*, 80 N. H. 389.

Because of the peculiar nature of the rights thus acquired, an abandonment thereof may be found from facts or evidence which might not lead to that conclusion if the right asserted were an easement recognized in courts of law. It not infrequently happens that there are reasons sufficient to defeat a party's remedy in equity, while he retains his right in an action at law. Having a legal right, the fact his equitable remedy is lost does not show that all his rights are obliterated. But when his whole right rests upon equities, lack of equity in his request for relief disposes of his entire claim. In other words, his right is limited to "what equitably belongs to him." *McCrillis* v. *Company*, *ante*, 165.

There is much force in the argument advanced in *Werner* v. *Graham*, 181 Cal. 174, that the intent to impose limitations must be found from the deeds "which constitute the final expression of their under-

standing" (*Ib.* 185), and that findings based upon oral transactions merely furnish ground for a decree of specific performance, that is, for the execution of a proper writing. While it has been the uniform practice to enforce the obligation found upon oral testimony without any intervening decree for specific performance, yet the basic idea has always been that the complaining party has established an equitable right. Hence, anything which would defeat a bill for specific performance in the matter of executing a writing is a defence to a claim that the asserted right be enforced without such writing.

"When equitable as distinguished from legal relief is sought, equitable as distinguished from legal defences have to be considered. The conduct of the plaintiff may disentitle him from relief; his acquiescence in what he complains of or his delay in seeking relief may of itself be sufficient to preclude him from obtaining it." *Knight* v. *Simmonds* [1896] 2 Ch. 294, 297.

In this case the master's findings establish the lack of equity in any claim that the restrictions are still in force. Conditions surrounding the plot have so changed as to make the restrictions imposed eighty years ago inappropriate, in a large measure, to the present character of the neighborhood. The tract is surrounded by property now largely devoted to business uses.

"Whether, under the common law of this state, the construction of the deed is that the parties intended the restriction should continue in full force if it should become useless" (*Winnipesaukee &c. Ass'n* v. *Gordon*, 63 N. H. 505, 506), may be an open question. But its increasing lack of utility is at least a fact to be considered with all the other circumstances in the case. It gives color to the conduct of the interested parties, and renders more probable the conclusion that it was understood that the restrictions were no longer in force.

The conduct of all the owners of lots delineated upon the plan manifests an understanding that the property could be used regardless of the conditions. Such use appears to have been made whenever any owner desired for at least thirty years. There was no protest or complaint by anyone. These instances are numerous, involving the use of about twenty of the twenty-four lots embraced in the original layout. One of the owners who now insists upon the restrictions has erected and now maintains a building contrary to the limitations expressed in the deed from Gage. This would bar her from obtaining equitable relief. *Loud* v. *Pendergast*, 206 Mass. 122.

Upon the filing of this bill the owners of all but three of the lots allowed it to be taken *pro confesso* as against them. "Standing by it-

self, evidence as to what such other owners will consent to would be of no value. But a court of equity may take into consideration the fact that all the interested persons, or the most of them, are willing to waive the enforcement of a covenant when injunctive relief to restrict its violation is sought by one of their number." *Batchelor* v. *Hinkle*, 210 N. Y. 243.

To these considerations is to be added the express finding of the master that the defendants have waived and slept upon their rights.

Upon such facts but one conclusion can be reached as to the present state of the claim of reciprocal right to restrict the use of these lots by reason of the conditions found in the deeds given in 1850. The rights have been abandoned.

This was the conclusion reached by the master, as a finding of fact. He states unequivocally that he "finds that if the Defendants had the right to compel the observance of the conditions they have waived them by their policy of non-interference over a term of years" and "that the defendants have slept on any rights they may have had."

The conclusion of the presiding justice that the master's findings only show an estoppel of the defendants from complaining of past violations of the restrictions fails to give effect to the specific findings of fact. The exception to the refusal to grant the prayer of the plaintiff's bill is sustained.

*Decree for the plaintiff.*

All concurred.