Strafford,
No. 4703.

ALFRED CATALFO, JR. *v.* ENOCH SHENTON & *a.*

Argued February 3, 1959.

Decided April 7, 1959.

**48**

*Fuller, Flynn & Riordan* and *John C. Driscoll* (*Mr. Driscoll* orally), for the plaintiff.

*Orr & Reno* and *Malcolm McLane* (*Mr. McLane* orally), for the defendant Shenton.

*Wyman, Bean & Tefft* (*Mr. Tefft* orally), for the defendant Courier Publishing Company.

KENISON, C. J.   The plaintiff, an attorney who was chairman of the Democratic State Committee, alleges "that in substance the article [written and published by the defendants] called the plaintiff 'a pig-in-the-parlor' element"; that the article has exposed him to public hatred, shame, contempt, ridicule, humiliation and disgrace; and that the article has injured his reputation as an attorney and injured his status as Democratic State Chairman by putting him "in ridicule and shame before the general public and the Democrats of the State of New Hampshire."

Research has not disclosed any case involving a public officer or a political candidate which holds that the phrase "pig-in-the-parlor element" is a defamatory one.   Every person, whether he be a newspaper editor, a political columnist or an unsung voter, has a right to comment upon or criticize political parties, public officers and candidates and their programs.   *Palmer* v. *Concord,* 48 N. H. 211, 216; *Lafferty* v. *Houlihan,* 81 N. H. 67, 71; Noel, Defamation of Public Officers and Candidates, 49 Col. L. Rev. 875.   From an early date a citizen has been allowed "to give useful information to the community" (*State* v. *Burnham,* 9 N. H. 34, 41, 42) without being subject to actions for libel, in order that competent officers be elected and incompetent officers be removed.   It frequently appears that the comment or criticism is not particularly useful and may be foolish, illogical, prejudiced or extravagant but this does not put it beyond the pale of fair comment into the orbit of

libel. Restatement, Torts, *s.* 606, *comment* c. "Freedom of discussion is not to be confined within narrow limits although its outer boundaries are circumscribed by the law of libel." *Blanchard* v. *Claremont Eagle, Inc.,* 95 N. H. 375, 379.

The phrase "pig-in-the-parlor" suggests something out of place. "A nuisance may be merely a right thing in the wrong place, —like a pig in the parlor instead of the barnyard." *Euclid* v. *Ambler Co.,* 272 U. S. 365, 388. The fact that the phrase is not a complimentary one does not automatically make it a libelous one. Criticism does not have to be diluted with praise in order to avoid the impact of a libel suit. The phrase "pig-in-the-parlor" also has some neutral tones to it in song and poem for young children but we may assume that it was not used in that sense in this case. See Bley, The Best Singing Games for Children of all Ages, *p.* 50 (1957); Depew, The Cokesbury Party Book 79, 80 (1932); Thomas Hood's Poetical Works, The Irish Schoolmaster 61 (Jerrold *ed.* 1935).

The article published by the defendants was essentially a comment on two alleged factions within the Democratic Party prior to a primary election. The article placed one faction in the category of modern "lace curtain" Democrats which sought "to take party control away from the pig-in-the-parlor element" of the "Old Guard leadership" which presumably referred to the plaintiff. "If criticism of a public officer or candidate is a means of attacking a political system of which he is a part, or if the criticism for any other reason affects a public policy of widespread interest, the area of comment may be extended as far as the interest is felt." Restatement, Torts, *s.* 607, *comment* b. It is not uncommon to find political commentators employing the basic and never-changing plot of "Westerns" on television programs where there are only "good guys" and "bad guys." So too in the political arena editors and columnists may place one public officer or political faction in the good category while the nonfavored officer or faction is placed in the other category. Since discussion of these political matters are considered desirable in the interest of free speech and necessary in the public interest, the doctrine of fair comment tends to restrict the law of defamation in this area. Note, Fair Comment, 62 Harv. L. Rev. 1207, 1215.

The tendency of commentators to ascribe virtue and culture to one person, party or faction and the lack of it to the opposition is not a new development in this state. The first meeting of the Grafton and Coos Bar Association in 1882 produced the following:

"Many centuries ago, a fellow by the name of Doe was chief Medicine man in the tribe in which he lived. In this tribe, the educated, well-behaved, and virtuous class, the g. o. p. of moral ideas, were called, as now, Republicans, while the low, uncultivated and vicious class were known, as now, as Democrats." Carpenter, "Address," 1 Proceedings of Grafton & Coos Bar Association 45-6 (1882). See Reid, Of Men, and Minks and a Mischievous Machinator, 1 N. H. Bar J. (No. 2) 23, 27 (1959). For the other side of the coin see Metcalf, Harry Bingham Memorial 87 (1910) where the Republican Party was described as a "conglomeration of odds and ends, — the refuse of all parties — bound together by no ties but common love of spoils and plunder."

The plaintiff, a public officer in his capacity as chairman of the State Democratic Committee, was identified solely in that position in the article which criticized one faction of the party. *Peck* v. *Coos Bay Times Pub. Co.,* 122 Ore. 408; *Sweeney* v. *Beacon Journal Pub. Co.,* 66 Ohio App. 475.

The article considered in its full context was capable of a defamatory meaning but, in the absence of malice or bad faith, was "privileged in the public interest." Prosser, Torts, 619 (1955); Restatement, Torts, *ss.* 614, 619. However the existence of malice or bad faith, which would constitute an abuse of the privilege, remains a question of fact for the jury. *Lafferty* v. *Houlihan,* 81 N. H. 67; 1 Harper and James, The Law of Torts, *s.* 5.27 and *s.* 5.29, *p.* 467 (1956). Accordingly the orders sustaining the demurrer and granting the motion to dismiss were erroneous.

*Exceptions sustained.*

All concurred.