Rockingham,
No. 5551.

RAY C. WEBB & a. v. RYE.

Argued January 6, 1967.
Decided May 23, 1967.

148

*Calderwood, Silverman & Ouellette ( Mr. Raymond R. Ouellette* orally ), for the plaintiffs.

*Boynton, Waldron* and *Dill ( Mr. Richard E. Dill* orally ), for the defendant.

LAMPRON, J. The town acquired, in 1938, a three-acre tract of land near Washington and Grove Roads in West Rye which it used continuously as an open dump for the disposal of refuse and garbage until August 1964 when a cone or tepee incinerator was installed thereon and used thereafter for that purpose. This parcel is now zoned single residence under the town ordinance ( adopted in 1953 and revised November 1959 ) but has continued to be used as a dump because of its prior nonconforming use. In April, 1964 the town bought an adjoining two acres, also zoned single residence, which it now uses in conjunction with the incinerator.

In September 1961, the plaintiffs bought their lot of land zoned single residence but situated near to and in sight of the town's three-acre tract which was then in active use as an open dump. The following August, plaintiffs applied for a permit to build a dwelling on their lot at an estimated cost of $24,000. The Trial Court properly found that they built their house after having been assured by certain town officials that the dump would not remain at that location for more than one or two years in the future.

The Trial Court found that "the use of the Wilco refuse burner by the Town of Rye at the old dump site has improved the conditions in the area in the following respects: It has done away with the congregating of sea gulls . . . reduced or eliminated rats . . . reduced flies . . . greatly reduced the fire hazard." However, the Trial Court made the following findings: "The operation of this refuse burner has been and now is a nuisance which subjects the plaintiffs to great and troublesome annoyance caused by smoke and objectionable odors from burning garbage and refuse. The Court also finds that this malodorous nuisance has caused a diminution in the market-value of the plaintiffs' property and that they have suffered irreparable harm." The Court in its decree dated January 16, 1966, ordered "that the Town cease its operation of this refuse burner after June 1, 1966." The town has continued to operate the burner during the period of this appeal.

The defendant town maintains that the Trial Court erred in granting an injunction against the further use of its tepee refuse burner at this site based upon the Court's findings that the town's operation of the burner "has caused a diminution in the market-value of the plaintiffs' property" and that "the economic loss to the plaintiffs is disproportionate to that of the Town in requiring the latter to stop its present refuse burning method." Defendant further maintains that in so doing the Trial Court erroneously applied "a doctrine of absolute nuisance" instead of "the long-standing doctrine of balancing the necessity and urgency of the public use against the private wrong asserted."

Laws 1955, 275:2 ( now RSA 147:23 ) has made it mandatory for each town, unless exempted ( RSA 147:23-a ), which Rye is not, to "provide and maintain public dumping facilities for the depositing of garbage and refuse." This statutory duty imposed

on the defendant is not, however, a sanction to create and maintain a nuisance. *O'Brien* v. *Derry*, 73 N. H. 198, 204; RSA 147:26. See Annot. 40 A.L.R. 2d 1177, 1182. Because of their necessity, indispensability, and contribution to the public welfare and health of the public in general, public dumps do not constitute a nuisance *per se* ( *Myers* v. *Hagerstown*, 214 Md. 312, 315 ), but they may become a nuisance in fact as a result of their location, the manner in which they are operated, or because of other circumstances. *Shea* v. *Portsmouth*, 98 N. H. 22, 27; *Chicago* v. *Fritz*, 36 Ill. App. 2d 457, 467; *In re Petition of St. George*, 125 Vt. 408, 412; Annot. 52 A.L.R. 2d 1134, 1136.

It follows, therefore, that even though the defendant was exercising a public right in performance of a public duty imposed upon it, if its use of its property was unreasonable as against adjoining owners the plaintiffs would be entitled to relief. *O'Brien* v. *Derry, supra*; *Proulx* v. *Keene*, 102 N. H. 427, 431; Annot. 52 A. L. R. 2d 1134, 1140. In deciding the reasonableness of the town's use, the Trial Court was to take into consideration all the circumstances including, among others, the need and importance of the use exercised by the defendant together with the extent of the inconvenience, damage, or injury to the plaintiffs in the use and enjoyment of their property. *Hayes* v. *Waldron*, 44 N. H. 580, 583; *Ladd* v. *Brick Co.*, 68 N. H. 185, 187; *True* v. *McAlpine*, 81 N. H. 314, 316. Whether under all the relevant circumstances the use made by the town constituted a nuisance was a question of fact to be determined by the Trial Court whose conclusions if warranted by the evidence will be sustained by this court. *True* v. *McAlpine, supra.*

The evidence upon which the Trial Court's findings were based included the following: The burner used by the town to dispose of refuse and garbage is operated seven days per week. Odor, smoke, and gases therefrom are being blown continuously toward the plaintiffs' property, about 650 feet away, and that of the other neighboring residents by the south winds which prevail about ninety per cent of the time in the summer. The "smoke from the burner settles to the ground and the stench is practically unbearable." "The smoke and stench comes into the house so heavily that we cannot open the windows, that means at night too." Plaintiffs and their neighbors become nauseated, irritable

and suffer lack of sleep as a result. The smoke "is irritating to your throat and nose." "It is a nauseating feeling that you get from the odor." "On a hot night it is unbearable and you can't sleep." Plaintiffs are limited in the outdoor use of their property. "We cannot have cookouts or guests outside of the house." "We cannot hang clothes outside at any time." Outdoor repairs are required to an unusual degree because of the oily film and ash produced by the burner. It "completely coats everything it touches . . . the windows, the automobiles, the side of the house."

A diesel payloader used in conjunction with the burner operates " at times all day long and especially early in the morning it is loud because that is when they use that to clear the previous day's refuse from the burner." It is operated on Saturdays and Sundays and is visible from plaintiffs' back yard. "The town has erected a heavy bright light by the incinerator that reflects continuously in plaintiffs' room."

A real estate broker and appraiser examined plaintiffs' property and the surrounding area. "It is a high type residential area on Washington Road. The properties in my opinion vary from 20 to 50 odd thousand plus " in value. The last time the witness examined plaintiffs' premises the burner was in operation " emitting a heavy black smoke toward the Webb property from the south. It had a dump odor, a very strong objectionable odor to it." In his opinion the effect of this dump area and refuse burner depreciates plaintiffs' property and the other properties in the neighborhood " at least 25 per cent."

A " Comprehensive Town Plan Rye, New Hampshire " ( February 1964 ) prepared with the aid of professional consultants was introduced as an exhibit. "One of the most vexing problems relating to community services is how to handle refuse disposal. In terms of a long-range planning program for the Town of Rye, the present method of disposal should be assessed as well as considered for relocation of the dump site. The present site, reached from Grove Road, under existing disposal practices cannot reasonably be expected to serve beyond a year or possibly two before its total capacity is reached " ( p. 68 ). "Landfill per se, would be extremely difficult in Rye because gravel deposits are so limited and much of the vacant area is marshy. There may be an answer, however, which is economically feasible in the

use of a refuse burner and then limited landfill " ( *p.* 71 ). " Consideration of existing land uses and values are elements of concern in the selection of any new site for dumping operations " ( *p.* 72 ). " Serious consideration for a new site, therefore, focuses upon existing gravel pits or inland areas where some gravel may be available for use in conjunction with a refuse burner " ( *p.* 72 ). The " Town Plan " report suggested the consideration of three specified areas in Rye for such use.

On February 5, 1964 the town of Rye received from the State a conveyance of a tract of land at Rye Harbor containing about ninety acres on condition " that it be used only for public and municipal purposes. " At the town meeting held March 10, 1964 the voters adopted the following warrant article: " To see if the Town will vote to raise and appropriate the sum of Twenty Thousand ( $20,000.00 ) dollars for the purpose of the acquisition of a refuse burner, a suitable site for the same, and a tractor loader, prepare the site, erect equipment and place the burner in operation to replace the present system of open burning of refuse at the town dump. " There was evidence that before this article was voted on at the town meeting, the 90-acre tract acquired from the State was discussed as a possible site for this refuse burner. A witness testified " I was led to believe it would be down in what was — down on the Government reservation. " Other witnesses, including plaintiff Ray Webb, testified they were under the impression that the incinerator would be located in a site other than the present dump. Given the wording of the article and the discussion at the meeting, the Trial Court was warranted in finding " that a reasonable interpretation of the Town Meeting Vote of March 1964 is that the Selectmen were to acquire a new site for this burner. "

There was evidence that following the March 10, 1964 town meeting the selectmen consulted for one or two months, with one another, the planning board, and other town officials, about the possibilities of other sites for the incinerator and that they concluded there was no reasonable alternative site in the town. On April 29, 1964 the town purchased a two-acre tract adjoining the open dump site. On May 22, 1964 the selectmen issued a " Notice to Bidders " for a refuse burner. A proposal for a tepee burner was submitted to them May 28, 1964. Site preparation for its erection at the old site began in June, the burner was erected and operating about August 1964. On the record,

including the " Town Plan " in which three possible sites for the burner had been suggested, the Trial Court was not compelled to conclude that the present site was the only site in Rye for this refuse burner. *Marchitto* v. *West Haven,* 150 Conn. 432, 438.

The evidence disclosed that the $20,000 voted at the March 10, 1964 meeting was spent as follows: $8,890 for the purchase of the tepee burner, $3,100 for the foundation and erection, $6,500 for the purchase of a payloader to service the burner, and the $1,510 balance was used to acquire the two-acre tract adjoining the old dump site to supply additional gravel and dumping space.

In summary the Trial Court had before it evidence of the deleterious effect of the present method of operating the incinerator on the use and enjoyment, and value, of plaintiffs' property and those of their neighbors. The Court also had evidence of the duty of the town to provide a dump for refuse and garbage, its investment in the incinerator, the length of time the town dump had been in this area, and evidence from which it could determine whether it was necessary to have the incinerator at this site.

We are satisfied that on the evidence the Trial Court could hold, as it did, that, even though the town was exercising a public right in performance of a public duty imposed upon it the operation of the incinerator under all the circumstances constituted an unreasonable use of its property because it resulted in unwarranted substantial injury to the essential rights of the plaintiffs and their neighbors in the use and enjoyment of their properties. *Proulx* v. *Keene,* 102 N. H. 427; *O'Brien* v. *Derry,* 73 N. H. 198, 204; *Ladd* v. *Brick Co.,* 68 N. H. 185. We fail to see how such a holding in this case or in *Proulx* v. *Keene, supra,* constituted, as contended by the town, an application of a doctrine of absolute nuisance and a rejection of the established law of this jurisdiction of balancing the necessity and urgency of the public use against the private wrong asserted. On the contrary, we are of the opinion that the Trial Court in the *Proulx* case and in this case did just that.

However once a right to equitable relief has been established, the powers of the Trial Court are broad and the means flexible to shape and adjust the precise relief to the requirements of the particular situation. *Wilmont Homes, Inc.* v. *Weiler,* ( Del. 1964 ) 202 A. 2d 576, 580; 1 Pomeroy's Equity Jurisprudence, *s.* 109, *p.* 140. The rights of the defendant, as well as those of the

plaintiffs, are entitled to consideration, and the Court should not interfere with the defendant's use and enjoyment of its property further than is necessary to give the plaintiffs the protection to which they are entitled. 66 C.J.S., Nuisances, *s.* 129, *p.* 925. If by the use of certain specific appliances or methods, operations on defendant's property, which now constitute a nuisance, could be carried on without causing unreasonable injury to the use and enjoyment of neighboring properties, defendant should not be enjoined from all use of its property for the particular purpose but only against its use in a manner found to be unreasonable. *Livezey* v. *Bel Air*, 174 Md. 568, 577; *Hannum* v. *Gruber*, 346 Pa. 417, 426. See Annot. 52 A.L.R. 2d 1134.

In the exercise of its discretion to determine the scope and quantum of equitable relief to be granted, the Trial Court should receive and consider evidence pertaining to such specific appliances or methods which might alleviate the harm caused to the plaintiffs. *Johnson* v. *Shaw*, 101 N. H. 182, 188; *Hannum* v. *Gruber*, 346 Pa. 417, 426. If deemed equitable in view of all the circumstances, the Court should consider affording the defendant a reasonable opportunity to improve conditions and abate the nuisance before restraining the operation entirely. *Urie* v. *Franconia Paper Co.*, 107 N. H. 131, 134; *Herring* v. *Walker Company*, 409 Pa. 126, 135; *Krulikowski* v. *Polycast Corporation*, 153 Conn. 661. This is especially true when, as in this case, the interest of the public is involved. *Bowers* v. *Calkins*, 84 F. Supp. 272, 278 ( D. N. H. 1949 ); *Livezey* v. *Bel Air*, 174 Md. 568, 577; *Gibson* v. *Baton Rouge*, 161 La. 637; *Space Aero Products Co.* v. *Darling Co.*, 238 Md. 93, 128.

We cannot say that the Trial Court erroneously excluded at the trial evidence of the effect of attaching an after-burner or other such mechanical device to eliminate smoke or odors. Evidently the defendant was not in possession at that time of sufficient evidence of the dependability or reliability of such devices since it made no offer of proof of their effectiveness. However it is now represented to this court on appeal that such devices are now in use and have been for a sufficient length of time at certain specific locations to permit an appraisal of their effectiveness and presentation of evidence thereof.

Because we are dealing with the exercise of a public right in performance of a public duty imposed on the defendant and for

the further reason that the devices involved are of recent origin and data on their effectiveness is only now available, we are of the opinion that the case should be remanded to the Trial Court for such proceedings as may be necessary to determine what, if any, effect these or other devices or appliances might have on the situation found to be a nuisance at the time of the trial. If it should appear reasonably probable that such devices or appliances would alleviate the conditions causing the nuisance, the Trial Court should allow the town a reasonable opportunity to install such devices in order to demonstrate their effectiveness. In the meantime the Trial Court's order of injunction against the defendant should be suspended or modified until further order of that court.

We consider lastly defendant's contention that it was denied a fair trial by reason of prejudice on the part of the Trial Court and because of other action and remarks of the Court during the hearing. It would serve no useful purpose to detail the allegations made and the answers thereto in the record itself. It is sufficient to state that we have carefully reviewed the transcript and are satisfied that the conduct of the Trial Court was free of prejudice, and its rulings warranted by the state of the record.

The case is remanded for further proceedings in conformity with this opinion.

*Remanded.*

All concurred.