Carroll
No. 78-128

HERBERT N. HESTON & a.

v.

GEORGE W. OUSLER & a.

February 14, 1979

*Nighswander, Lord, Martin & KillKelley*, of Laconia (*Bradley F. Kidder* orally), for the plaintiffs.

*Wescott, Millham & Dyer*, of Laconia (*Peter V. Millham* orally), for the defendants.

BOIS, J.   Two issues have been preserved for our review by exceptions to the report and recommendations of the Master (*George W. Walker*, Esq.), as approved by the Court (*Dunfey*, J.). The defendants except to the master's finding that the location and use of their dock on shorefront property on Lake Winnipesaukee constitutes both a private nuisance and an encroachment on the plaintiffs' littoral rights, and to the order requiring the removal of their dock and the establishment of a "buffer zone" where neither the defendants nor the plaintiffs shall be permitted to maintain dockage. We overrule this exception. The

defendants' further exception to the order that an equitable servitude requires them to remove two outbuildings from within twenty feet of their property boundary is sustained.

This case comes to us as the result of a dispute between owners of shorefront property on Moultonboro Neck, Lake Winnipesaukee. The parties own abutting two hundred foot lots of shorefront property in a large subdivision known as Kona estates. The plaintiffs bought their property in 1959; the defendants in 1975. The discord which subsequently arose culminated when the plaintiffs filed suit against the defendants to establish their upland boundary line, require the relocation of defendants' two outbuildings, compel the removal of debris allegedly deposited by defendants on plaintiffs' property, and force the relocation of defendants' dock from its location immediately adjacent to the plaintiffs' shorefront.

The master's rulings settling the upland boundary line and ordering the defendants to pay the plaintiffs $500 for the cost of removing debris that he found had been intentionally deposited on the plaintiffs' property have not been challenged on appeal. The defendants have excepted, however, to the master's rulings ordering the removal of their outbuildings and dock from their present locations.

*The Dock*

The master ordered relocation of the defendants' dock upon an explicit finding that it constituted a private nuisance. The master found that the defendants deliberately encroached upon the littoral rights of the plaintiffs and that they had the "general desire to extend their dominion and possession to the uttermost limits."

The master made his findings not only upon a consideration of the testimony of several witnesses, but also with the benefit of a view. We will not substitute our own judgment for that of the trier of fact if it is supported by the evidence, especially when he has been assisted in reaching his conclusions by a view. *Gerrish v. Wishbone Farm*, 108 N.H. 237, 239, 231 A.2d 622, 624 (1967). It is the function of the trier of fact to determine whether a nuisance exists and we will sustain his conclusions if they are warranted by the evidence. *Webb v. Rye*, 108 N.H. 147, 150, 230 A.2d 223, 226 (1967).

The landmark case outlining the law of nuisance in our jurisdiction is *Robie v. Lillis*, 112 N.H. 492, 299 A.2d 155 (1972). We held that a nuisance exists when there is a substantial and unreasonable interference with a property interest. *Id.* We emphasized that the aesthetic or "unaesthetic quality" of an activity is "an important consideration in

the balancing process involved in the determination of its reasonableness under all the circumstance." *Id.* at 498, 299 A.2d at 160. We have departed from the traditional concept that a nuisance requires actual physical interference with another's property right. See DeGrandpre, *Lex Loci: Recent New Hampshire Supreme Court Decisions,* 14 N.H.B.J. 120, 123 (1973). "Property rights cannot be used as a shibboleth to cloak conduct which adversely affects . . . the welfare of others." Powell, *The Relationship Between Property Rights and Civil Rights,* 15 HASTINGS L.J. 135, 149–50 (1963).

The master's finding of a nuisance is warranted by the evidence. The defendants' dock is located at the extreme easterly side of their property, immediately adjacent to the plaintiffs' shorefront. The record indicates that the defendants have dramatically increased both the size and use of the dock since assuming ownership from their predecessors. The configuration of the shoreline is such that when the plaintiffs look out to the open lake from their home, the defendants' dock is directly in front of them and it totally obscures their view. There also was evidence that its regular use has created a safety hazard for the plaintiffs when swimming within their own water space.

The defendants are correct when they argue that the construction and appearance of their dock are not unusual for Lake Winnipesaukee. They accurately point out that their use of the dock for boating, swimming, and bathing is not unusual for waterfront properties. Yet it is the location of the dock that the master emphasized as the essence of the nuisance and the encroachment on the plaintiffs' littoral rights. "A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard." *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388 (1926). The defendants' dock has been found to be that proverbial pig in the parlor. *See Catalfo v. Shenton,* 102 N.H. 47, 149 A.2d 871 (1959).

The defendants argue that the master's order in the present case creating a "buffer zone" where neither party may maintain dockage "went far beyond the necessary remedy," and was incorrect as a matter of law because it utilized a simple extension of the parties' upland boundary lines to demarcate the dividing line between their respective water spaces. There is no precedent in this State concerning the issue of proper allocation of water space between abutting littoral owners. Many other States have considered the issue and established rather elaborate mechanical formulas to determine littoral boundary lines.

Boundary lines are determined differently under these formulas, depending upon whether the configuration of the shoreline is straight, convex, or concave. *E.g., Commonwealth v. City of Roxbury*, 75 Mass. 451, 522 (1857); *see* Annot., 65 A.L.R.2d 143 (1959).

We have adopted a fixed mechanical formula for making an equitable division between abutting riparian owners of alluvion formed by the natural action of water. *Watson v. Horne*, 64 N.H. 416, 418, 13 A. 789, 790 (1887). Nevertheless, we refrain at this time from adopting a similar mechanical rule to determine the scope of littoral owners' rights. Rather, we adopt a rule of reasonable use as the guidepost in adjudging the permissible exercise of a shorefront owner's littoral rights. Littoral owners may erect wharves and use the waters adjacent to their shorefront property for a panoply of recreational activities. Their use is governed, however, by a rule of reasonableness, *Whitcher v. State*, 87 N.H. 405, 409, 181 A. 549, 553 (1935); *Dolbeer v. Suncook Water-Works Co.*, 72 N.H. 562, 564–65, 58 A. 504, 506 (1904), and must be restricted so as not to interfere with the correlative rights of other littoral owners. *Bassett v. Salisbury Mfg. Co.*, 43 N.H. 569, 577 (1862); *see* Kalinski & Forste, *A Survey of New Hampshire Water Law*, 13 N.H.B.J. 3, 5, 28 (1970).

The master found that the location and use of the defendants' dock "unreasonably and substantially infringes upon the plaintiffs' rights." The determination of reasonable use by a littoral owner is a question of fact, *State v. Great Falls Mfg. Co.*, 76 N.H. 373, 376, 83 A. 126, 128 (1912), and we will not reverse the master's finding if it could reasonably have been reached based upon the evidence. *Sargent Lake Ass'n v. Dane*, 118 N.H. 720, 722, 393 A.2d 559, 561 (1978). There is evidence in the record to support the master's finding that the defendants' dock unreasonably encroached upon the correlative littoral rights of the plaintiffs. We will not disturb that finding.

In applying the rule of reasonable use to determine littoral rights, however, we hold that the master incorrectly ruled that the parties have fixed littoral dominions that may be ascertained by a simple extension of their upland boundary lines. Nevertheless, the remedy ordered by the master, creating a thirty foot "buffer zone" where neither party can build a dock, even though utilizing a line extending the upland boundaries, was within the wide ambit of relief that may be afforded in equity. "[O]nce a right to equitable relief has been established, the powers of the [master] are broad and the means flexible to shape and adjust the precise relief to the requirements of the

particular situation." *Webb v. Rye*, 108 N.H. 147, 153, 230 A.2d 223, 228 (1967).

## The Outbuildings

■ The master's report included an order that the defendants must move two outbuildings, presently located near and over their property line, to more than twenty feet away from it. The master relied upon a restrictive covenant, establishing twenty foot setback requirements, that was contained in the deed from the developer of the Kona Estates subdivision to the defendants' predecessors and to the plaintiffs. We hold that the master erred in ruling that the plaintiffs have standing to enforce the setback requirements. Therefore, the order to the defendants to move their outbuildings is vacated to the extent that it requires moving them more than twenty feet from the property line. The defendants' only obligation is to assure that their buildings do not encroach onto the plaintiffs' property.

■ Although restrictive covenants are particularly useful devices in planning the development of lake communities, and we have rejected the traditional policy of strictly construing them, *Joslin v. Pine River Dev. Corp.*, 116 N.H. 814, 817, 367 A.2d 599, 601 (1976), it remains fundamental that the primary tool for determining whether grantees of lots in a subdivision may enforce such covenants is the "language of the instruments." *Traficante v. Pope*, 115 N.H. 356, 360, 341 A.2d 782, 785 (1975). Restrictions included in restrictive covenants must have been intended by the common grantor to inure to the benefit of all purchasers of the subdivided lots or the purchasers will be powerless to enforce them. *Nashua Hosp. Ass'n v. Gage*, 85 N.H. 335, 339, 159 A. 137, 139 (1932). The "language of the instruments" in the present case clearly is meant to preclude purchasers of individual lots from enforcing any equitable servitudes. The enforcement right is reserved exclusively for successor developers. The deeds from the common grantor to the defendants' predecessors and to the plaintiffs read:

> All rights in law and in equity for the enforcement of the conditions and restrictions contained herein shall be enforceable by the grantor's successors irrespective of the time when such rights shall accrue. *The term "Successors"* used herein shall mean any person, firm, or corporation succeeding the grantor as promotor and developer of this subdivision, but *shall not mean grantees of individual lots or assigns of grantees.* (Emphasis added.)

This language unequivocally forecloses the plaintiffs' right to enforce the setback requirements.

*Conclusion*

In summary, we overrule the defendants' exception to that part of the master's report finding that the location and use of their dock constitutes a nuisance and an encroachment upon the plaintiffs' littoral rights. We further affirm the "buffer zone" remedy that the master has ordered. We sustain, however, the defendants' exception to that part of the master's order requiring the moving of their outbuildings more than twenty feet from the plaintiffs' property line.

> *Exceptions sustained in part,*
> *reversed in part.*

All concurred.