[No. 23124–3–I.   Division One.   September 5, 1989.]

EARL COLLINSON, ET AL, *Appellants,* v. JOHN L. SCOTT, INC., ET AL, *Defendants,* WILLIAM A. BAIN, ET AL, *Respondents.*

*Jon G. Hongladarom* and *Oles, Morrison & Rinker,* for appellants.

*Joseph C. Roberts* and *Skeel, Henke, Evenson & Roberts,* for respondents.

COLEMAN, C.J.—Appellants appeal from an order dismissing their nuisance cause of action against the respondents. We affirm.

Earl and Doris Collinson are the owners of a home at 1939 Broadway on the western slope of Capitol Hill. They purchased the home in August 1987 because of its view and were then under the impression that no one could build on the property below them. Shortly after moving in, William and Carol Bain and Flemming and Lexie Sorensen built two multi-story, multi-unit condominiums on the property below the Collinsons' property. The condominiums blocked the western view from the Collinsons' home.

On April 1, 1988, the Collinsons filed a complaint for damages and injunctive relief against the Bains and Sorensens, claiming that the condominiums would obliterate the view from the Collinsons' property and that the actions of the Bains and Sorensens constituted a nuisance to the Collinsons.[1] In their answer, the Bains and Sorensons raised as an affirmative defense that they were developing their property and constructing thereon condominiums in compliance with the law and pursuant to plans and permits approved by the City of Seattle which were a matter of public record.

On September 9, 1988, the Bains and Sorensons moved to dismiss pursuant to CR 12(b)(6) and 12(c) on the ground that the Collinsons had failed to state a claim upon which relief could be granted. The Bains and Sorensens argued that obstructing a neighbor's western view by constructing

---

[1] In addition to the Bains and the Sorensons, the complaint named John L. Scott, Inc., Michael and Jane Doe Chamberlin (the real estate agent and his wife), and Sol and Jane Doe Thacher (the previous owners of the house at 1939 Broadway). The claims against these parties are not a part of this appeal.

a residence in compliance with applicable zoning laws did not constitute actionable nuisance under RCW 7.48. They further argued that because the Collinsons did not have an easement or restrictive covenant, the Collinsons' complaint failed to state a cause of action.

On September 26, 1988, after reviewing the complaint, the affidavits of Earl Collinson and his attorney, Jon Hongladarom, and hearing arguments from counsel, the trial concluded that there was no genuine issue of material fact and that the Bains and Sorensens were entitled to a judgment of dismissal as a matter of law. This appeal followed.

The parties are correct that a CR 12(c) motion is converted to a CR 56 summary judgment "if matters outside the pleadings are presented to and not excluded by the court." *Stack v. Chicago, M., St. P. & Pac. R.R.*, 94 Wn.2d 155, 157, 615 P.2d 457 (1980). In the instant case, the trial court considered the affidavits of Earl Collinson and Jon Hongladarom, in addition to the pleadings. Therefore, respondents' motion for dismissal pursuant to CR 12(b)(6) was properly treated as a motion for summary judgment.

The primary issue in the instant case is whether the lawful construction of a building which obstructs portions of a neighbor's view constitutes actionable nuisance under RCW 7.48.010. Appellants claim that it does. We do not agree.

Washington's nuisance statute defines an actionable nuisance for which damages and other relief are available as "whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property[.]" RCW 7.48.010. RCW 7.48.120 provides a more specific definition of the elements of a nuisance action:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park,

square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

The parties concede that there are no Washington cases which have considered whether "obstructing a view" constitutes actionable nuisance. However, appellants argue that they have adequately alleged an actionable nuisance under RCW 7.48.010. Appellants contend that the building of two multi–story, multi–unit condominiums that obliterate their view is offensive, obstructs the free use of their property, and destroys the comfortable enjoyment of their property. Appellants further contend that although it is not necessary that they satisfy the per se definition of nuisance in RCW 7.48.120, they have met that burden. Appellants argue that respondents omitted to perform a duty by failing to take into consideration appellants' view when respondents commercially developed the property below the appellants. However, appellants do not offer any authority for this proposition.

Appellants rely on *Thornton v. Dow,* 60 Wash. 622, 111 P. 899 (1910) for the proposition that the word "nuisance" has been characterized as comprehensive enough to include almost all wrongs interfering in any way with personal rights of any kind. Nuisance, as defined by the court in *Thornton,* means "'anything that worketh hurt, inconvenience, or damage.'" *Thornton,* at 633 (quoting *Veazie v. Dwinel,* 50 Me. 479 (1862)). Thus, appellants argue that they are entitled to have the jury determine whether the "hurt worketh" by the respondents' development is substantial enough to be a nuisance. Appellants further contend that they are entitled to have a jury balance and weigh all the facts and circumstances in order to determine whether respondents have acted unreasonably. Appellants contend that respondents' actions were unreasonable because of the fact that views from properties in the area are important. Appellants contend that the respondents' actions were particularly unreasonable given the fact that

had respondents eliminated only one level of the development or located the development on a different portion of the property, appellants' view may have been saved.

Respondents contend that their conduct did not constitute a nuisance. Respondents argue that in order for their conduct to constitute a nuisance it must be (1) conduct that is unlawful or otherwise wrongful (RCW 7.48.120); or (2) conduct not expressly authorized by statute (RCW 7.48-.160); or (3) conduct that interferes with the rights of the appellants to enjoyment of their life or property or render them insecure therein. RCW 7.48.010, .120. Respondents contend that, absent a conveyance from his neighbor, a person does not have a property right in a view across his neighbor's land. Respondents further contend that an unobstructed view has never been held essential to the enjoyment of life or a person's use of his property. This argument is supported by a majority of courts considering this issue.

■ The general rule appears to be that a building or structure cannot be complained of as a nuisance merely because it obstructs the view of neighboring property. *Scharlack v. Gulf Oil Corp.*, 368 S.W.2d 705, 707 (Tex. Civ. App. 1963); *Wolf v. Forcum*, 130 Ind. App. 10, 161 N.E.2d 175, 178 (1959); *Venuto v. Owens–Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 99 Cal. Rptr. 350, 357 (1971); *Mohr v. Midas Realty Corp.*, 431 N.W.2d 380 (Iowa 1988). That rule finds its genesis in the repudiation of the English doctrine of ancient lights. Under that doctrine, a landowner acquired an easement for light across an adjoining landowner's property and could prevent the adjoining landowner from obstructing the light once the easement was established by the passage of time. *See Prah v. Maretti*, 108 Wis. 2d 223, 321 N.W.2d 182, 188 (1982). The doctrine has been repudiated on the basis that "'it is not adapted to the conditions existing in this country and could not be applied to rapidly growing communities without working mischievous consequences to property owners.'" *Venuto*, at

127 (quoting 1 Cal. Jur. 2d *Adjoining Landowners* § 30, at 758–59); *Scharlack,* at 707.

Appellants rely on *Prah* and *Heston v. Ousler,* 119 N.H. 58, 398 A.2d 536 (1979) for the proposition that other jurisdictions have considered similar nuisance theories and have allowed plaintiffs to proceed with such actions. However, these cases are distinguishable. The nuisance in *Heston* was a dock built by the defendants which deliberately encroached upon the littoral[2] rights of the plaintiffs. *Heston,* at 537. The court found that the configuration of the shoreline was such that when the plaintiffs looked out to the open lake from their home, the defendants' dock was directly in front of them and it totally obscured their view. The court also found that there was evidence that the dock's regular use had created a safety hazard for the plaintiffs when swimming within their own water space. *Heston,* at 538. In the instant case, unlike in *Heston,* respondents have neither violated any rights of the appellants, nor have they created a safety hazard for the appellants.

*Prah* involved a conflict between one landowner who was interested in unobstructed access to sunlight across adjoining property as a natural source of energy and an adjoining landowner interested in the development of his land. *Prah,* at 184. The issue in *Prah* was whether an unreasonable obstruction of access to sunlight was a private nuisance. The *Prah* court concluded that, under the facts of that case, the plaintiffs had stated a nuisance claim. The court further stated that although obstruction of access to light might be found to constitute a nuisance in certain circumstances, it does not mean "that it will be or must be found to constitute a nuisance in all circumstances. The result in each case depends on whether the conduct complained of is unreasonable." *Prah,* at 240. In the instant case, unlike in

---

[2]"Corresponding to riparian proprietors on a stream or small pond are littoral proprietors on a sea or lake." Bouvier's Law Dictionary 2037 (1914).

*Prah,* there was no allegation that respondents' condominium interfered with appellants' access to sunlight.

*Karasek v. Peier,* 22 Wash. 419, 61 P. 33 (1900), while not directly on point, is analogous. In *Karasek,* respondent and appellant were owners of adjoining lots. *Karasek,* 420. Appellant built a 9–foot fence on his property which blocked respondent's access to light. Respondent thereafter sought to restrain appellant from erecting the fence. Respondent averred in her complaint, among other things, that appellant maliciously built the fence for the purpose of annoying and spiting her by shutting off the light from the three windows on the north side of her house. *Karasek,* at 421. Respondent's action was based upon section 5433 of Ballinger's Code which provided that an injunction may be granted to restrain the malicious erection by a landowner of any structure intended to spite, injure, or annoy an adjoining property owner. *Karasek,* 423. Respondent also averred that the fence had made her house less rentable.

The *Karasek* court held that neither that fact nor the fact that light had been cut off from respondent's windows constituted a cause of action in her favor "unless they are the result of an unreasonable, and therefore unlawful, use by the appellant of his own premises." *Karasek,* at 427. The court stated that "[a]t common law a man has a right to build a fence or other structure on his own land as high as he pleases, although he thereby completely obstructs his neighbors' light and air, . . ." *Karasek,* 427. The only exception to that rule is "where one has acquired, by long user, a right in the nature of an easement to have light pass to his windows across the land of his neighbor." *Karasek,* at 427. The court recognized that in the United States the courts have, with few exceptions, repudiated the doctrine of ancient lights. *Karasek,* at 427–28. The court concluded by holding that "[a]n easement of light and air can be acquired in this country only by grant, either expressed or implied, . . ." *Karasek,* at 428. Thus, whatever right the respondent in *Karasek* had to an injunction was derived

solely from the statute and not the common law. *Karasek,* 428.

By analogy, the appellants in the instant case have no right under the common law to bring a nuisance action. Appellants do not possess any easement of light, air, or view, nor do they possess any legal cause for complaint for interference therewith by the lawful erection of a building on respondents' property. *See Wolf v. Forcum,* 130 Ind. App. 10, 161 N.E.2d 175, 178 (1959). The better reasoned rule following the rationale in *Karasek* is that a building or structure cannot be complained of as a nuisance *merely* because it obstructs the view from neighboring property.[3] "Rights of adjoining landowners in the use and enjoyment of their property are relative, but they are also equal. Equity cannot restrict one landowner to confer a benefit on the other." *McInnes v. Kennell,* 47 Wn.2d 29, 38, 286 P.2d 713 (1955).

Finally, respondents contend that the trial court erred by denying their motion for attorney fees pursuant to RCW 4.84.185, which provides for an award of attorney fees in defending against a frivolous lawsuit. We disagree. Inasmuch as this is a case of first impression, it cannot be said that the appeal is frivolous.

The trial court's order of dismissal is affirmed.

PEKELIS, J., and WILLIAMS, J. Pro Tem., concur.

---

[3]In the instant case, unlike in *Karasek,* there were no allegations of malicious or malevolent conduct. Therefore, we need not decide whether such allegations would be sufficient to state a nuisance cause of action.